UNITED STATES, Appellee,

v.

Private (E–2) Clarence STOKES, Jr., SSN
195–44–8216, United States
Army, Appellant.

SPCM 13406.

U. S. Army Court of Military Review.

18 Oct. 1978.

Colonel Edward S. Adamkewicz, Jr.,
JAGC, Major Benjamin A. Sims, JAGC, and
Major Carlos A. Vallecillo, JAGC, were on
the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieuten-
ant Colonel R. R. Boller, JAGC, Captain
Richard A. Kirby, JAGC, and Major David
McNeill, Jr., JAGC, were on the pleadings
for appellee.

Before JONES, DeFORD and LEWIS,
Appellate Military Judges.

OPINION OF THE COURT

DeFORD, Judge:

The appellant, pursuant to his pleas, was
convicted by a special court-martial of pos-
session, transfer and sale of marihuana in
violation of Article 134, Uniform Code of
Military Justice (10 U.S.C. § 934). His ap-
proved sentence included a bad-conduct dis-
charge and confinement at hard labor for
three months.

On appeal appellant alleges, as he did at
trial, that the court-martial that convicted
him lacked jurisdiction over the offenses.
He further assigns as error the allegation
that the convening authority failed to per-
sonally detail the military judge, counsel
and court members citing *United States v.
Ryan*, 5 M.J. 97 (C.M.A.1978), and *United
States v. Newcomb*, 5 M.J. 4 (C.M.A.1978).

The operative facts with which we are
concerned are that the appellant occupied a
trailer approximately one to one and a half
miles from the military reservation at Fort
Campbell, Kentucky. On the evening of 8
February 1978, a confidential informant,
working with a CID drug suppression team
and while under that team's surveillance,
made a purchase of marihuana from the
appellant. A second attempt to purchase
marihuana from the appellant later that
evening was unsuccessful.

At about 6:00 a. m. on the morning of 9 February (Thursday), Specialist Fourth Class Smetana, a military policeman and a member of the Fort Campbell Drug Suppression team, accompanied by another agent and the informant of the previous day, went to the appellant's trailer. Agent Smetana and the informant both dressed in military uniforms, approached the trailer and knocked on the door. When the appellant answered the door, the informant advised him that Agent Smetana was a friend named "Tom" and that he had smoked some of the marihuana that had been purchased the day before and that "Tom" desired to purchase some marihuana. The appellant invited the two men into the trailer. Agent Smetana advised the appellant he desired to purchase four "bags" of which he stated he would use a portion and resell the balance on the post. The appellant removed a plastic bag from a cabinet that contained nine smaller plastic packets of what appeared to be marihuana and invited Smetana to take his choice. The agent complied with the appellant's request and selected four packets of which he opened one and smelled its contents, ascertaining that it contained the substance in question. He then paid the appellant $40.00 for the four packets. Following a brief interlude, Smetana identified himself as a police officer and arrested the appellant.

## I

We are required to examine the issue of service connection in accordance with the oft repeated criteria set forth by the Supreme Court of the United States in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *United States v. Alef*, 3 M.J. 414 (C.M.A.1977).

At the outset of our inquiry, we recognize that facts such as are before us in this case represent a critical dilemma for military authorities. They are charged with protecting the integrity of their commands from pervasive forces that seek to corrupt or otherwise pervert them and erode their readiness to perform contingency missions, some within hours or days after alert. Yet the law requires that military jurisdiction in cases of this nature only be exercised where there is "service connection" within the context of that term as used in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). In *Relford*, criteria were enunciated which, when applied on an ad hoc basis, assist in determining whether the crime in question is service connected. Military precedent requires such examination on the record, and those criteria that support military jurisdiction must be weighed and balanced against those that do not.[1]

The issue of "service connection" turns in a major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in the civilian courts.[2]

The Supreme Court of the United States in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), took note of the Solicitor General's statement that "drug abuse is a far more serious problem in the military context than in civilian life."[3] That Court then noted the comments in *United States v. Beeker*,[4] that the use of marihuana and narcotics by military persons on or off a military base has special military significance in light of the disas-

---

1. *United States v. Alef*, 3 M.J. 414 (C.M.A. 1977); *United States v. Hedlund*, 3 M.J. 162 (C.M.A.1976), among others.

2. *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

3. *Id.* at n. 34.

4. *United States v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969). This decision has been sapped of much of its vitality by a subsequent decision of the United States Court of Military Appeals. *See United States v. McCarthy*, 2 M.J. 26, 29 (C.M.A.1976). However, the statements made therein concerning the serious problem of drug abuse in the military appears to be as valid now as when enunciated in 1969.

trous effects of these substances on the health, morale and fitness for duty of persons in the armed forces.

Turning to the events before us, we observe that the appellant sold marihuana to a person he believed to be a fellow soldier after being told that a portion of the substance purchased would be resold on the military reservation. This sale took place just before the beginning of a normal duty day and in close proximity to the military enclave. All were in duty uniforms. The only logical conclusion was that the marihuana would be taken on post.

 Examining these facts in light of the oft repeated *Relford* criteria, we find (1) that the parties were properly absent from their units; (2) the offenses were committed off (although reasonably near) the military reservation; (3) the place where the offenses were committed was not under military control; (4) the offenses were committed in the United States during (5) peace time; (6) there was no apparent connection between the offenses and the appellant's military duties; (7) the victims were not performing a military duty; (8) we have no reason to believe that the courts of the State of Kentucky were not open and available for a prosecution of these offenses; (9) the wrongful acts flouted military authority;[5] (10) the appellant's acts constituted a threat to the security of the military post;[6]

(11) the offenses did not involve military property; and (12) the offenses are among those traditionally prosecuted in the civil courts.

Thus, as may be seen, two of the twelve criteria tend to support military jurisdiction.

We find that the appellant's activities constituted an illegal act among soldiers that manifested a severe threat to the military enclave and an even greater threat to the preparedness of the command to perform its national security role. Accordingly, we find the military had paramount interest in this prosecution which was distinct from and greater than the civilian community in which it occurred.

## II

Appellant's second assignment of error lacks merit for reasons set forth in *United States v. Mixson*, 5 M.J. 236 (C.M.A. 1978).

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge LEWIS concur.

---

5. *Cf. United States v. Bender,* 2 M.J. 738 (A.F. C.M.R.1976), *aff'd* 4 M.J. 85 (C.M.A.1977).

6. We note, as was done in *United States v. Alef, supra,* that the sale of illicit substances to an undercover policeman will result in those substances being removed from distribution and consequently result in no threat to the military post. However, we observed in *United States v. Valles-Santana,* 2 M.J. 1049 (A.C.M.R. 1976), n. 10, *aff'd* 4 M.J. 84 (C.M.A.1977), the fact that a seller sells to an undercover police officer and thus unknowingly avoids the distribution which the seller believes he was creating should not diminish the consequences of his illegal act. We believe that if the seller transfers the illicit substances under circumstances that objectively manifest that his act of sale could result in a distribution pattern in which it is reasonably foreseeable that that distribution will adversely affect the health, morale, and fitness of other soldiers, the threat to the secur-

ity of the military post is then apparent. Thus the inquiry rests upon whether there was a manifested threat rather than an actual one. We do not believe that the Supreme Court of the United States intended that soldiers should be given civilian sanctuaries to practice prohibited acts which, by their nature seek to corrupt and pervert military personnel on the military enclave. The Constitution authorizes the Congress to make rules for Government and regulation of the land and naval forces. Congress enacted the Uniform Code of Military Justice for that purpose. The Supreme Court of the United States has noted that power to regulate includes the power to try and punish. The military commander cannot preserve the integrity of his command if he cannot control his own personnel who engage in such corrupt and perverted practices as selling marihuana and drugs to other soldiers within the immediate proximity of his installation.