UNITED STATES, Appellee,

v.

Private (E–2) Michael E. JOHNSON, SSN
376–60–9091, United States
Army, Appellant.

CM 434423.

U. S. Army Court of Military Review.

9 Feb. 1979.

See also 5 M.J. 664.

Colonel Edward S. Adamkewicz, Jr,
JAGC, Major Benjamin A. Sims, JAGC, Major Carlos A. Vallecillo, JAGC, and Captain
Michael B. Dinning, JAGC, were on the
pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Major
Michael B. Kennett, JAGC, and Captain
Carl F. Meyer, Jr., JAGC, were on the
pleadings for appellee.

Before FULTON, TALIAFERRO and
WATKINS, Appellate Military Judges.

OPINION OF THE COURT ON
FURTHER REVIEW

FULTON, Senior Judge:

This case is before us a third time. In
December 1975 the appellant was tried at
Fort Jackson, South Carolina, for several
drug offenses committed in the adjacent
city of Columbia. On his pleas of guilty, he
was convicted. By action dated 9 February
1976, the convening authority approved

"only so much of the sentence as provides for dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade and confinement at hard labor for one year."

At the outset of our review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976), this Court found it necessary to order a limited hearing into the question whether there was military jurisdiction over the off-post offenses in the light of *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976). In the limited hearing, held at Fort Leavenworth, Kansas, the military judge concluded that the court-martial had jurisdiction. The Staff Judge Advocate prepared a review of the proceedings, concluding it with a recommendation that the convening authority "approve the proceedings and findings of the military judge." The convening authority approved that recommendation and ordered the augmented record of trial returned to this Court "for completion of appellate review."

The next step in the review produced our opinion *United States v. Johnson*, 5 M.J. 664 (A.C.M.R.1978). We resolved adversely to appellant a purported jurisdictional issue that stemmed from our having extended the original time limit for holding the limited hearing. Because, however, the staff judge advocate's review had not been served on the appellant's counsel for comment, in accordance with the principles of *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975), we set aside the "action" taken by the Fort Leavenworth convening authority (see 5 M.J. at 668 n.20) and directed a new review and "action." We chose not to express any views on the question of subject-matter jurisdiction. 5 M.J. at 668.

Another staff judge advocate review has been prepared, and again recommends that the convening authority approve the proceedings and findings of the military judge. The review has been served on counsel for the accused (the same one who represented appellant in the limited hearing). Counsel's rebuttal has been considered. The convening authority has approved the staff judge advocate's recommendation, and he has

again ordered the record of trial returned to this Court for completion of appellate review.

Appellate counsel for the appellant reassert the same errors as before and an additional error concerning the effective date of the total forfeitures imposed by the trial court. Of those previously asserted, we have answered the question concerning the Fort Leavenworth convening authority's jurisdiction to conduct the limited hearing after the date specified in this Court's original order (*i. e.*, the question of our jurisdiction to extend that time limit). Part II of our previous opinion, 5 M.J. at 666–67. Therefore, we need only discuss the contentions that the heroin offenses lacked service connection and that military authorities have no jurisdiction to proscribe off-post possession of drug paraphernalia.

I

The jurisdictional facts with which we deal are as follows: The appellant, stationed at Fort Jackson, met, on the post, a civilian named Brown, a taxi operator who frequented the post, operating from a taxi stand thereon. Brown expressed a desire to sell drugs to service persons and the appellant agreed to assist.

Thereafter, the appellant had a conversation with one Velasquez, a member of his unit, from which Velasquez concluded that the appellant could obtain heroin for sale. Velasquez's information was relayed to Special Agent Mason, a member of the local Criminal Investigation Detachment. Mason enlisted a military police investigator, Sergeant Allen, to assist in making a controlled purchase from the appellant. In pursuance of that object, Velasquez and Sergeant Allen, in Allen's car, met the appellant at a parking lot on Fort Jackson at about noon on Sunday, 19 October 1975.

Allen was dressed in civilian clothes (as were the others) and apparently had a long hair style that did not exactly comply with Army hirsute regulations. So far as the record discloses, the appellant believed Allen to be a civilian employed by the post exchange snack bar. Allen testified that,

938

as Mason had instructed him to do, he led the appellant to believe that he wanted heroin for resale to trainees at Fort Jackson (a basic training center).

At the appellant's direction, the party followed another car to an off-post trailer park, but was unable to arrange a transaction and so returned to the post where the appellant engaged a taxi driver to lead them to Mr. Brown, off post.

When the party located Brown, he joined them and directed them to a motel where they picked up one more person, thence to a barbershop where they arranged a purchase. Sergeant Allen gave the appellant sixty dollars. The appellant gave twenty dollars to the man at the barbershop, kept thirty, and returned ten to Allen. The heroin apparently was handed to Brown. They then returned to Brown's residence, by way of the motel. At Brown's residence, the appellant went in with Brown and came out with two packets containing .08 gram of heroin. He also had a hypodermic needle for which he had received ten dollars from Sergeant Allen (he split the $10.00 with Brown). He handed these items to Velasquez, who gave them to Allen and the party returned to Fort Jackson. A few days later after further negotiations concerning purchase and sale of heroin, the appellant was apprehended. These events led to the charges of possession and sale of heroin (acknowledged to be multiplicious) in violation of Article 134, 10 U.S.C.A. § 934, and possession of a hypodermic needle and syringe in violation of a regulation promulgated by the commander of Fort Jackson.

■ We reject the appellant's contention that the amount of heroin—which he prefers to describe as one three-hundred-fiftieth of an ounce—was so small that the important *Relford*[1] element of a threat to the military post is lacking.[2] As testified by Special Agent Mason, argued by the trial counsel, and found by the military judge the potentiality of even that quantity of heroin is not insignificant. Considering the fact that all of the contacts and arrangements save for the final sale were made on the post and had the sole object of obtaining a drug for introduction to and resale on the post, we hold that the heroin offenses were service-connected.

■ In the particular circumstances of this case, we regard jurisdiction over the offense of possessing paraphernalia as affected by the service connection of the heroin offenses. We agree with the appellant that "the existence of a general regulation declaring specified conduct as punishable, does not, standing alone, *per se* confer jurisdiction on a court-martial to try one accused of its violation. The conduct proscribed therein must be 'service connected' within the meaning of *O'Callahan v. Parker,* . . ."[3] The possession of drug paraphernalia such as a hypodermic needle and syringe is, at least in some circumstances, a matter of sufficient military significance to be an appropriate subject of prohibitory regulations.[4] In this case, we do not have the regulations before us, apparently because the appellant pleaded guilty.[5] His plea admitted the existence of the regulation, its territorial applicability away from Fort Jackson, and the lack of any defense such as use for medicinal purposes.

1. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *United States v. McCarthy,* 2 M.J. 26 (C.M.A.1976).

2. In effect, the appellant seeks to employ the "usable quantity" doctrine for jurisdictional purposes. *Cf. United States v. Bennett,* 3 M.J. 903, 906–07 (A.C.M.R.1977). When the case was first before us, service connection was attacked on the basis that sale to a government agent precluded any threat to the post. *See United States v. Stokes,* 6 M.J. 595, 597 n.6 (A.C.M.R.1978); *United States v. Beckman,* 4 M.J. 814, 815 n.2 (A.C.M.R.1978).

3. *United States v. Castro,* 18 U.S.C.M.A. 598, 600, 40 C.M.R. 310, 312 (1969); *see United States v. Smith,* 1 M.J. 156 (C.M.A.1975).

4. *United States v. Tee,* 20 U.S.C.M.A. 406, 43 C.M.R. 246 (1971); *cf. United States v. Caballero,* 23 U.S.C.M.A. 304, 49 C.M.R. 594 (1975).

5. Otherwise, the content of the regulations must be proved or judicially noted. *See United States v. Williams,* 3 M.J. 155 (C.M.A.1977).

The remaining question is one of service connection within the meaning of *Relford*.

■ The appellee has asked that we judicially note, which we do, "the fact that possession of a hypodermic needle and syringe is not a criminal offense either under South Carolina statutes or Federal civilian criminal statutes."[6] Accordingly, the case is not one that can be prosecuted in the civilian courts so as to vindicate the military interest in prohibiting the possession of equipment for the administration of drugs. Of equal, and in this case critical, importance the contraband items were possessed concurrently and in direct connection with the drug itself under circumstances in which the drug offense was service-connected. We hold that, in these circumstances, there was military jurisdiction to regulate and to punish violations thereof.

## II

■ The appellant now contends that the adjudged forfeitures cannot be applied to pay accruing before 19 July 1978, the date of the last orders issued by the convening authority at Fort Leavenworth (directing, as previously noted, that the record be forwarded to us for completion of appellate review). We will not detail his supporting arguments, for we think the answer abundantly clear: The initial action of the convening authority at Fort Jackson, dated 9 February 1976 and quoted previously, provided that "Forfeitures shall apply to pay and allowances becoming due on and after the date of this action." This was in accordance with the provisions of paragraphs 88$d$(3) and 126$h$(5) of the Manual for Courts-Martial, United States, 1969 (Rev. ed.). No subsequent decision or order of this Court, nor any order or "action" of the convening authority at Fort Leavenworth purported to or did affect the initial approval of the sentence and concurrent application of forfeitures. *See, e. g.,* 5 M.J. at 668 n.20.

The findings of guilty and the sentence are affirmed.

Judge TALIAFERRO and Judge WATKINS concur.

---

6. Reply to the Assignment of Errors at 6. *Cf. United States v. Teasley,* 22 U.S.C.M.A. 131, 46 C.M.R. 131 (1973) (possession of syringe violated local law).