**414**

UNITED STATES, Appellee,

v.

James C. ALEF, Sergeant, U.S. Air Force, Appellant.

No. 31,403.

ACM 21879.

U. S. Court of Military Appeals.

Oct. 11, 1977.

*Colonel Robert W. Norris* and *Major Bruce R. Houston* were on the pleadings for Appellant, Accused.

*Colonel Julius C. Ullerich, Jr.* and *Captain Gilbert J. Regan* were on the pleadings for Appellee, United States.

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was convicted, pursuant to his pleas, of simultaneous sale and possession of cocaine in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to a bad-conduct discharge, forfeiture of $229.00 pay per month for 12 months, confinement at hard labor for 12 months, and reduction to the grade of airman basic. The convening authority reduced the period of confinement and forfeitures to 9 months, but otherwise approved the sentence. The United States Air Force Court of Military Review affirmed the findings and sentence.[1] We granted the petition for review to consider whether the court-martial lacked jurisdiction to try the appellant for the simultaneous off-post sale and possession of cocaine. Upon examination of the record and

---

1. *United States v. Alef*, 54 C.M.R. 480, 2 M.J. 317 (A.F.C.M.R.1976).

the applicable *Relford*[2] standards which must be utilized for a determination of whether offenses are service connected, we conclude that the court-martial lacked jurisdiction to try the offenses in question.

### I

■ We are required to examine the issue of service connection in accordance with the criteria set forth by the Supreme Court in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), in order to resolve questions of subject matter jurisdiction. As we recently stated in *United States v. Moore*, 1 M.J. 448, 450 (1976):

> What *Relford* makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. A more simplistic formula, while perhaps desirable, was not deemed constitutionally appropriate by the Supreme Court. It no longer is within our province to formulate such a test.

This analytical process of carefully balancing the *Relford* criteria to determine whether the military interest in deterring the offense is distinct from and greater than that of the civilian jurisdiction, as well as whether this distinct military interest can be vindicated adequately in the civilian courts, must be completed on a case-by-case, offense-by-offense basis. *United States v. Hedlund*, 3 M.J. 162 (1976). We are obliged again to examine the question of service connection as to drug offenses because, despite our decision in *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976), and other *Relford*-based opinions,[3] we have been beset by a barrage of theories utilized to find service connection, but which bear no relation to the analysis set forth in *McCarthy*.[4]

■ The evidence of record indicates that the offenses occurred off-post in a parking lot in Leisure City, Florida. Air Force Office of Special Investigations (OSI) agents, acting through an informer, set up a controlled purchase in which Sergeant Alef sold the cocaine to the informant. Upon completion of the transaction,[5] OSI agents and Dade County police moved in and arrested the appellant. Our examination of this case reveals that all twelve *Relford* factors weigh against military jurisdiction: (1) the appellant was properly away from his installation during both the actual sale and the negotiations;[6] (2) the

---

**2.** *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

**3.** *See, e. g., United States v. Sims*, 25 U.S.C.M.A. 290, 54 C.M.R. 806, 2 M.J. 109 (1977); *United States v. Wilson*, 25 U.S.C.M.A. 26, 54 C.M.R. 26, 2 M.J. 24 (1976); *United States v. Hedlund*, 3 M.J. 162 (1976); *United States v. Uhlman*, 1 M.J. 419 (1976).

**4.** As we commented recently in *United States v. Sims, supra*, both we and the Courts of Military Review are obliged to follow the mandates of the Supreme Court in this area, and despite possible misgivings or disagreements, it is not without our province either to create or attempt to utilize theories inconsistent with the mandates of the Supreme Court. *See United States v. Heflin*, 23 U.S.C.M.A. 505, 506 n. 6, 50 C.M.R. 644, 645, 1 M.J. 131, 132 (1975).

We must further note that the Courts of Military Review have persisted in the utilization of such theories to find jurisdiction even in those cases where a proper *Relford-McCarthy* analysis would have resulted in a finding of court-martial jurisdiction.

**5.** The actual sale occurred in the informer's automobile, and the appellant was arrested upon leaving the automobile after the informant gave the prearranged signal. The usual procedures of police observation and recording the serial numbers of the currency to be used by the informant in the buy were followed by the police.

**6.** As is clear from the stipulation of fact (attached to this opinion as an Appendix) introduced by the government to meet its burden on the question of jurisdiction, the sale and essential underlying negotiations occurred off post during off-duty hours. The evidence of record reveals that the initial encounter between the accused and the informant was a chance meeting which occurred the night before the sale, and that in a subsequent off-post encounter approximately two hours later, the informant, after coordinating a plan with the OSI, for a controlled buy, arranged with Sergeant Alef for an off-post sale of cocaine. The price and quantity of cocaine were predetermined, as well as the fact that the sale would occur off post the next day. The parties, in fact, stipu-

offenses were committed off the installation in. Leisure City, Dade County, Florida; (3) this area, a parking lot behind a lounge in Leisure City, was clearly not within military control; (4) the offense occurred within the territorial limits of the United States and not an occupied zone of a foreign country; (5) the alleged offenses took place during a time of peace and had no relationship to the war-making power; [7] (6) the crimes were unrelated to the appellant's military duties; [8] (7) the "victim" at the time of the offense was not engaged in a military duty; [9] (8) the crimes are of the type that are normally processed in the civilian courts, and there was no indication that the civilian courts were unavailable to try these offenses; [10] (9) the crimes were unrelated to military authority and involved no flouting thereof; [11] (10) the offenses do not appear

lated that "the deal was arranged" during this phone call on the night in question.

Ironically, the Air Force Court of Military Review in its opinion noted that:

Aside from the single circumstance that the recipient of the drug was a serviceman, none of the factors relied on in *McCarthy* to establish service connection are present.

54 C.M.R. 480, 486, 2 M.J. 317, 320 (1976) (footnote omitted). Yet that court opined that if felt that the *Relford* criteria were not meant to be "slavishly applied." As was made clear in *United States v. Sims, supra*, we disagree.

Further, with all due respect to the dissenting judge, we feel that under the facts of this case, it is neither necessary nor proper to refer to matters contained in the allied papers presented at the Article 32 investigation for factors upon which an inference of possible service connection may be developed. As noted in *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976), evidence bearing upon the jurisdiction of a court-martial should be subject to cross-examination before it is adopted by an appellate tribunal to dispose of a *contested* issue, absent a stipulation. Where, as here, the parties stipulate to the essential facts of the issue, utilization of the evidence presented during the Article 32 investigation is neither required nor permitted. Surely the significant differences between the issue of court-martial jurisdiction—a prerequisite in each case to proceeding with a given prosecution by the government—and the question of effectiveness of counsel in matters such as potential conflicts of interests or divisions of loyalty should readily indicate the reason why resort to the allied papers would be required in a case such as *United States v. Davis*, 3 M.J. 430 (C.M.A.1977), and not in the instant case. Matters of jurisdiction must be established by the government on the record, and we will not resort to examining allied papers to find potential conflicts suggesting the need for possible additional litigation on the question. The issue presented in *Davis*, and many other cases involving effectiveness of counsel, by its very nature involves analysis of matters other than those presented on the record, and hence, it is logical that different rules must obtain. Here the evidence of record demonstrates an absence of service connection to sustain court-martial jurisdiction. Perusal of matters presented at the Article 32 investigation in order to glean evidence which might support a government request for a limited rehearing in order to establish that which it failed to establish in the initial trial is inappropriate.

7. We reject the theory of the government counsel that because the appellant by possessing and selling cocaine, violated a lawful general regulation (A.F.R. 30–2), he had in some manner triggered a relationship between his actions and the war-making power, as being both unfounded and unrelated to meaningful *Relford* analysis. Similarly, we cannot accept his contention that violation of a regulation is per se a service-connected offense calling for either ignoring or rejecting the required *Relford* analysis.

8. Nor can we agree with the government's contention that by virtue of having these drug offenses charged as a violation of a regulation under Article 92, the offenses have been transformed automatically into ones which always relate to an individual's military duties. This is a factor which must be established on a case-by-case basis, and not generalized. *United States v. Williams*, 25 U.S.C.M.A. 176, 54 C.M.R. 284, 2 M.J. 81 (1976).

9. *See* note 12.

10. We have no doubt that the Florida courts have an interest in, and regularly try, such offenses. The interest of the civilian society is made especially evident in this case by the presence and assistance of the Dade County police prior to and during the controlled buy. Further, in *United States v. McCarthy, supra*, 25 U.S.C.M.A. at 35, 54 C.M.R. at 35, 2 M.J. at 29, we specifically rejected the position again raised by the government that the fact that a given civilian community may take a "hands off" approach to such prosecutions serves as a circumstance, in and of itself, sufficient upon which to predicate military jurisdiction.

11. We cannot accede to the government's argument that since all the services have promulgated regulations prohibiting the various facets of the drug situation, any violation thereby constitutes a flouting of military authority. As explained in note 8, this is a factor to be established, not generalized.

to have involved a threat to the military post;[12] (11) there was no violation of military property; and (12) the offenses were among those traditionally prosecuted in the civilian courts, and were not peculiarly military in nature.[13]

## II

Although the jurisdictional question is clear in this instance, we are not unmindful of the serious drug abuse situation facing the armed forces and, indeed the nation. Resolution of military jurisdiction, often a difficult task for the Court, is further exacerbated by the inherent problems of proof encountered in demonstrating compliance with the service-connection criteria enunciated in *Relford.*

 This difficulty exists, we believe, because of the unfortunate motion practice which has developed in military courts on questions of jurisdiction. The crux of the problem is that the prosecution does not present to the trial court sworn charges/indictments which, *on their face*, set forth sufficient facts to demonstrate that a balancing of the *Relford* criteria weighs in favor of jurisdiction over the given defendant and his acts in a military tribunal. The specification format[14] currently utilized simply does not present sufficient information to demonstrate military jurisdiction; as should be readily apparent from Part I of this opinion, for more jurisdictional data is required than that presently given—the name of the defendant, his rank or military status, the date and situs of the offense,[15] and the nature of the offense. Unlike its civilian counterpart, jurisdiction in military tribunals requires a case-by-case analysis utilizing a balancing test of the 12 *Relford* criteria as opposed to a simple application of set statutory criteria.[16] In the absence

---

12. It may well be argued that where one service member sells or transfers contraband narcotics, drugs or marihuana to another service member, it is reasonably foreseeable that those illicit substances will filter back into the military community. Although we certainly do not discount such a possibility, this factor must be weighed in relationship to the locale of the sale or transfer, and such other circumstances as would, in and of themselves, determine the remoteness or probability of such an occurrence. This sale and all the essential underlying negotiations occurred off-post with all indications from the record being that the parties had blended into the civilian community. Further, as the "victim," Sp5 Hines, in this case, was an informant working for the OSI in a controlled buy, it is beyond cavil that the evidence of record indicates the factual impossibility of the substance being reintroduced into the military community in the manner spoken of in *United States v. McCarthy, supra.*

Additionally, while we recognize the need to consider this possibility in each case, we cannot embrace the "commuter distance" theory which has been offered, nor its corollary that the decision of a commander to disperse military police outside the territorial confines of his installation to participate in attempts to curtail off-post drug activity constitutes indicia of a threat to a military installation sufficient to warrant a finding of court-martial jurisdiction.

13. As detailed in notes 7, 8, and 10, we consider these offenses among those traditionally prosecuted in civilian courts, and do not deem the decision of the military to prosecute them as a violation of Article 92 as transforming these into offenses "particularly military in nature."

We must reject, as we did in *McCarthy*, the continued efforts of the lower courts to find automatic jurisdiction whenever a "serious" or addictive drug or substance is involved, regardless of the remaining facets of the case, in reliance upon our prior decision of *United States v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969). While we can fully appreciate the seriousness of the current drug situation in both the military and civilian context, decisions finding jurisdiction based upon the nature of the substance in question, rather than the above-described method of analysis, reflect a conscious and erroneous choice to ignore both *McCarthy* and *Relford.* No one seriously questions the need to punish those involved in the trafficking of drugs; yet this desired goal cannot be determinative of the decision as to which is the appropriate forum or sovereign to prosecute. It should be clear that the *Beeker* analysis no longer represents the law of this Court to the extent that it permits a finding of court-martial jurisdiction by ignoring *Relford.*

14. The format is found in Appendix 6 of the Manual for Courts-Martial, United States, 1969 (Revised edition).

15. This information is often only given in the form of "at or near" a given situs which has produced needless confusion and factual inquiries resulting in, among other things, the "commuter distance" theory of jurisdiction rejected by the Court. *See* note 12.

16. Undoubtedly the model specifications found in Appendix 6c were drafted by comparison to

of such indictment, the defense is not truly on notice of what jurisdictional basis, if any, the government is urging, and this, in no small part, has contributed to the scant (even non-existent) evidence which is the product of the current motion practice. The better practice,[17] and the one we now make mandatory, is for the government affirmatively to demonstrate through sworn charges/indictment, the jurisdictional basis for trial of the accused and his offenses.[18] Development of this type of trial practice should ensure that military tribunals will be presented with sufficient evidence to resolve service-connection issues utilizing the approach set forth in Part I of this opinion.[19]

The decision of the United States Air Force Court of Military Review is reversed; the findings and sentence are set aside and the charges are ordered dismissed.

## APPENDIX

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS UNITED STATES AIR FORCE
USAF TRIAL JUDICIARY

IN THE SECOND JUDICIARY CIRCUIT

| | |
|---|---|
| UNITED STATES<br><br>V.<br><br>SERGEANT JAMES C. ALEF,<br>USAF, FR 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<br>USAF Hospital, Homestead<br>Homestead Air Force Base,<br>Florida 33030 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) STIPULATION OF FACT |

It is hereby stipulated by and between the Prosecution and the Defense with the express consent of the accused that:

On 2 April 1975, Specialist 5 Ronald D. Hines, U.S. Army, Headquarters Battery 3/68, Homestead Air Force Base, Florida, visited the residence of Virgil Clayton, at Apartment 19701 on 110th Court, Cutler Ridge, Florida. When he arrived, Clayton, a Sergeant James C. Alef and two unidentified persons were present. Alef and one of the unidentified persons were engaged in a conversation concerning the sale of cocaine. During the course of the discussion, Clayton suggested that Hines might want to buy

those utilized in the federal civilian courts; these are unsatisfactory for military practice, however, because of the difference in establishing jurisdiction in the two systems.

17. Although this is a drug case and these cases represent particularly difficult factual patterns for analysis, the practice we made mandatory applies to all cases regardless of the nature of the offense.

18. Defense counsel may, of course, always as a preliminary matter challenge the indictment as being too uncertain or vague utilizing a motion for a Bill of Particulars. Counsel who wish to challenge the sufficiency of a charge to allege military jurisdiction should do so by motion to quash, demonstrating in what particulars the charge fails to allege facts sufficient to demonstrate "service connection." Counsel desiring to challenge the factual accuracy of the allegations regarding jurisdiction also should move to quash the charge, accompanying the motion with specific evidence to rebut the facts alleged in the indictment.

19. It has been contended that *United States v. McCarthy, supra*, set forth a new standard, and that the services in "good faith reliance" upon *United States v. Beeker, supra*, and its concept of the "singular military significance" of drug offenses were "justified" in an assumption of jurisdiction even over off-base offenses. *See United States v. Lampe*, and other cases listed in daily journal 77-129 (July 11, 1977), 3 M.J.

some cocaine and Hines indicated he would. Hines then gave Alef his phone number saying that if Alef were interested in selling some cocaine, Alef should call him (Hines) so that they could arrange the deal. After Specialist 5 Hines left the apartment he contacted Special Agent Wesley L. Higgins of AFOSI Detachment 707, Homestead AFB, Florida, and telephonically related the above information. Higgins and Hines then coordinated a plan to arrange a controlled buy of cocaine in the event that Alef called Hines. Later that night approximately 9:30 P.M., Alef did call Hines and the deal was arranged. Around 8:00 in the morning of 3 April 1975, Hines called Alef as agreed and arranged to meet Alef at around 12:30 P.M. at the Leisure City Lounge at Leisure City, Florida. Hines coordinated this plan with SA Higgins and about 12:00 noon that day met Higgins at a safe site to obtain money from Higgins with which to purchase the cocaine from Alef. Hines left the safe site with $400.00 in cash provided to him by the OSI and drove to the parking lot of the Leisure City Lounge. When Hines left the safe site and at all times thereafter, he was under OSI surveillance. At approximately 12:30 Sergeant Alef arrived in his sports car at the meeting place and met Hines. Alef got into the passenger side of Hines' car, talked for a moment and they drove off a little distance around the block. When they parked the car they conversed for a few moments and then Sergeant Alef gave Hines five small plastic bags of white powder in exchange for which Hines paid Alef $350.00 ($70.00 a bag), from the money provided by the OSI. The white powder offered to Hines was held out to be cocaine by Alef, and Alef stated that it was pretty good stuff. After this transaction was completed, Hines drove back to the parking lot and as he parked he pumped his brakes which was the pre-arranged sign that the transaction had taken place. Immediately thereafter, both Hines and Alef were apprehended by Special Agent Higgins and Detective Henning of the Dade County Public Safety Department. Both men were searched and Higgins recovered the five bags of white powder from Hines in the glove compartment of Hines' car as well as the remaining $50.00 of the money he had provided Hines. $350.00 in currency was found on Alef and the serial numbers of these bills were compared with the list of serial numbers previously made by Higgins. The numbers matched. The five plastic bags of white powder, Prosecution Exhibits 2 - 2 e____, were sent to the Dade County Crime Lab where a forensic chemist, Mr. Brewer, analyzed the substance and found that they contained 4.65 grams of cocaine.

*Richard W. Brock*

RICHARD W. BROCK, Captain, USAF
Circuit Trial Counsel

*Richard R. James*

RICHARD R. JAMES, Captain, USAF
Circuit Defense Counsel

*James C. Alef*

JAMES C. ALEF, Sergeant, USAF
Accused

299–300. Thus, it is urged that if we are to apply *McCarthy*, it should not be applied retroactively to cases tried before the date of that decision. We disagree, and need look no further than our decision in *Mercer v. Dillon*, 19 U.S.C.M.A. 264, 41 C.M.R. 264 (1970), to conclude that the holding in *McCarthy* must apply to all cases not final before September 24, 1976, the date of that decision.

PERRY, Judge (concurring):

The requirement, which we adopt today, requiring the Government to allege all facts necessary to constitute personal and subject-matter jurisdiction in any case before a court-martial is reflective of procedural dictates and practices in every Anglo-American criminal jurisdiction. It is so generally accepted that citation to specific authority would serve no purpose.

COOK, Judge (dissenting):

I disagree unqualifiedly with the majority's rule that, henceforth, the Government must "demonstrate through sworn charges/indictment, the jurisdictional basis for trial of the accused and his offenses." The office of the specification has never before been perceived to require a statement of the evidence in support of an essential allegation. The Uniform Code does not require allegation of that kind; nor is it prescribed by the President, whose authority, under Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836, to regulate courts-martial procedure comprehends, in my opinion, the power to specify short forms of specification for military offenses. *United States v. Marshall*, 18 U.S.C.M.A. 426, 40 C.M.R. 138 (1969).

Until now, the accused's status as a person subject to the Uniform Code was sufficiently identified by allegation of his rank and organization; thus, the Manual indicates that "description by rank and organization . . . [shows the accused] is within court-martial jurisdiction as to persons." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 28 *a* (1). Henceforth, the possibility that accused's entry into the service may have been tainted would require allegations in the specification to "demonstrate . . . the jurisdictional basis" for the exercise of jurisdiction over him. *See United States v. Barrett*, 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1

M.J. 74 (1975). Similarly, until now, delineation of conduct proscribed by the Code has always been enough to demonstrate subject-matter jurisdiction. Now, the totality of the evidence bearing on the matter must be set out in the specification. It seems to me that if elaboration is believed necessary to the accused, the proper way for him to obtain it is by a motion for further particulars. *United States v. Williams*, 12 U.S.C.M.A. 683, 685, 31 C.M.R. 269, 271 (1962).

It may be that, when challenged at trial, the Government will not be able to establish that a military offense that has been committed in the civilian community was sufficiently service connected to allow the exercise of court-martial jurisdiction in that instance. However, that situation is no different from the failure of the Government to establish guilt beyond a reasonable doubt. In the latter instance, the failure of proof does not retroactively invalidate the specification. I believe the same underlying reasoning requires the conclusion that a facially sufficient allegation of the commission of a military offense is not rendered null and void by the failure to establish, when challenged, the service connection of the offense charged. *See Byrnes v. United States*, 327 F.2d 825, 834 (9th Cir. 1964), *cert. denied*, 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739 (1964). To me, the rule now promulgated by the majority has an unacceptable potential for mischief and runs counter to the modern practice under which supportive evidence is excluded from the specification. *See* Manual, *supra*, paragraph 28; Fed.R.Crim.P. 3 and 7(c).

Turning to the merits, evidence at the Article 32 investigation indicates that the arrangements for the meeting, in an off-base parking lot, for the sale of cocaine were made by the accused in a telephone call to him, pursuant to his request, at his "duty phone number at the Dental Clinic" at Homestead Air Force Base. In that conversation the caller, Specialist Hines, informed the accused that he "had CQ" and the transaction had to be accomplished "on

. . . [his] dinner hour." The accused agreed, and designated the off-base parking lot as the place for the transfer of the drug "because he felt it was safer." From these circumstances, I believe it can fairly be inferred that the accused anticipated that Hines would immediately return to the base with the drug in his possession.

In note 12, the majority imply that frustration of the accused's anticipation that the drug would be introduced into the military community militates against consideration of the accused's anticipated consequence of his conduct as a jurisdictional factor. I disagree. In my view, the record, in its entirety, establishes the service connection of the offense, and allows the exercise of court-martial jurisdiction. *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976).

On the basis of note 2 in *McCarthy*, the majority hold, in note 6 of their opinion here, that recourse to the Article 32 investigation for matter relevant to jurisdiction "is inappropriate." I disagree with that determination for two reasons. First, the footnote in *McCarthy* cited *United States v. Bethea*, 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973), "as barring resort" to the record of investigation "to *resolve* the jurisdictional issue." 25 U.S.C.M.A. at 34, 54 C.M.R. at 34, 2 M.J. at 28. As I read the *Bethea* opinion, it is not nearly as expansive as represented in *McCarthy*. The Court held in *Bethea* that "review of the guilt or innocence of an accused [is limited] to the evidence presented at trial," but that extra record matter, including that contained in the allied papers, can properly be considered by the convening authority in connection with his action on the sentence. 22 U.S.C.M.A. at 225, 46 C.M.R. at 225.

Not a word in the *Bethea* opinion cast doubt upon then prevailing practice that when the jurisdiction of the court-martial is challenged for the first time in this Court, the Court can look, not just to the evidence at trial, but also to the Article 32 investigation[1] and to reliable post-trial recitals of facts relevant to the issue.[2] Without reference to these cases, note 2 of the *McCarthy* opinion took a different tack. In my opinion, that tack was erroneous because it did not properly distinguish between uncontested facts and disputed facts. Quite recently, the majority has acknowledged that "matters outside the record" of trial can be considered to decide a "question of effectiveness of counsel." *United States v. Davis*, 3 M.J. 430 n. 1 (C.M.A. 1977). As with appellate assessment of the trial effectiveness of counsel, undisputed facts in the allied papers before the Court can provide a solid basis for determination of the issue. Where the evidence is in conflict, a limited *DuBay*-type[3] hearing into the matter to resolve the conflicts is appropriate. As the facts crucial to my decision are undisputed, I have no hesitancy in deciding the jurisdictional issue.

The second reason I reject the majority's holding that Article 32 investigation evidence cannot be considered at all on the jurisdictional issue is that *McCarthy* is to the contrary. As I read note 2 of that opinion, matter in the allied papers can be considered at least for the limited purpose of determining "whether a rehearing to gather additional evidence is warranted"; in other words, such evidence can call for a *DuBay* hearing. In fact, *McCarthy* refers to *DuBay* in that context. As this case was decided before *McCarthy*, I believe the an-

1. *United States v. Plamondon*, 19 U.S.C.M.A. 22, 41 C.M.R. 22 (1969); *United States v. Crapo*, 18 U.S.C.M.A. 594, 40 C.M.R. 306 (1969); *United States v. Chandler*, 18 U.S.C.M.A. 593, 40 C.M.R. 305 (1969).

2. *United States v. Riehle*, 18 U.S.C.M.A. 603, 40 C.M.R. 315 (1969); *United States v. Cochran*, 18 U.S.C.M.A. 588, 40 C.M.R. 300 (1969).

3. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

tecedent practice should be followed; but, in any event, on this record, the Government is, in my opinion, entitled to the opportunity to prove the jurisdictional basis for the exercise of court-martial jurisdiction.