**UNITED STATES, Appellee,**

v.

**Private (E-1) Willie M. RESPESS, SSN 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, United States Army, Appellant.**

**SPCM 13450.**

U. S. Army Court of Military Review.

23 March 1979.

---

12. *United States v. Fosher,* 449 F.Supp. at 77.

13. *See* Rule 403 of the Federal Rules of Evidence which is reproduced in n.11, *above.*

Captain James J. Parwulski, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Major D. David Hostler, JAGC.

Captain Rexford T. Bragaw, III, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Richard A. Kirby, JAGC.

Before DE FIORI, CARNE and THORNOCK, Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge:

Appellant was tried by a military judge, sitting as a special court-martial, for twelve offenses of communicating by means of a telephone indecent, insulting, and obscene language to a female and one offense of breaking restriction, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. He pleaded not guilty to all the offenses but was convicted of seven specifications of communicating indecent, insulting and obscene language[1] and the breaking of restriction.[2] He was sentenced to a bad-conduct discharge and confinement at hard labor for six months. The convening authority approved the sentence as adjudged.

This case is before the Court for mandatory review pursuant to Article 66, UCMJ, 10 U.S.C. § 866, with two errors assigned. First, it is urged that court-martial jurisdiction for the offenses of communicating obscene language was lacking[3] under the holdings in *Relford* and *Alef*.[4] Secondly, it is alleged that the military judge erred in

---

1. Each obscene language offense consisted of the communication of vulgar, earthy, and crude words designed to arouse the sexual desires of the parties with the ultimate goal of sexual gratification.

2. The findings in three of the offenses of communicating obscene language and the breaking of restriction were by exceptions and substitutions.

3. Appellant placed these calls while off-duty from an off-post telephone near his home in a civilian community.

4. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *United States v. Alef,* 3 M.J. 414 (C.M.A.1977).

denying the appellant's motion to dismiss the obscene language offenses as violative of appellant's right to equal protection of the laws since (1) there was "no rational nondiscriminatory basis for charging [him] with communicating obscene language to a female" under Article 134 instead of "simple disorder" under Article 134 and that (2) the Manual for Courts-Martial, United States, 1969 (Revised edition), unconstitutionally limits the offense by gender. We find neither assertion meritorious.

■ Being mindful of the mandate issued by the United States Court of Military Appeals in *United States v. Alef*, 3 M.J. 414 (C.M.A.1977), that the basis for court-martial jurisdiction must be affirmatively demonstrated through sworn charges, we initially, observe that the specifications on their face set forth the following:

> Jurisdiction attaches to the military in that said language was communicated by means of a telephone to a military dependent while she was within military housing located at Pershing Park, Fort Hood, Texas. Pershing Park, Fort Hood, Texas is an area under exclusive military jurisdiction and control. Jurisdiction further attaches in that the telephone calls were made in retaliation for official military action undertaken by the victim's husband, Staff Sergeant Sammy L. Green.

This indictment placed the appellant on notice of the jurisdictional basis urged by the Government, and the record reveals no motion by the defense at trial challenging military jurisdiction because of insufficiency of facts to determine "service-connection" as contemplated in *Alef*.[5] We recognize, however, that the absence of an attack on the jurisdictional basis at trial does not relieve this Court from its obligation to determine whether service-connection exists as a pre-

requisite for our review. Accordingly, we will examine the evidence of record utilizing the balancing test of the *Relford* criteria to resolve the service-connection issue.

Our examination reveals that although the appellant was off-duty at the time when he placed telephone calls from an off-post telephone near his home in the civilian community, the victim, a dependent housewife, resided in Pershing Park, Fort Hood, with her two younger dependent sisters.[6] The numerous telephone calls in question were all received by the victim at her residence on post. Therefore, the commission of each offense was completed on post when the victim heard the obscene language.[7] Furthermore, after the victim reported these telephone calls to the military police, she arranged at their suggestion, a meeting with the caller at 1800 hours, 3 March 1978 behind an establishment on post called "Alice's Pad" in an effort to have the caller apprehended. At the appointed time, the victim was at that place in her vehicle, and she observed two men who were acting suspiciously. She identified the appellant as one of those men. However, no person approached her while she was in her vehicle, and after a short period of time she returned to her home. About fifteen minutes later she received a telephone call from a person who stated: "I see that you kept your promise. You were there. You started your car up about a quarter after six, you have blue and white license plates and long brown hair." The voice of the caller sounded the same as the man who had been making the obscene calls to her and was also the same as the voice of a person who called earlier and identified himself as Respess.[8]

During a subsequent call, a second meeting between the victim and the caller was

---

5. *United States v. Alef, supra* note 4, n.18.

6. The victim's husband, Staff Sergeant "G", was in Germany having left Fort Hood fourteen days prior to the first telephone call.

7. *United States v. Jones*, 5 M.J. 579 (A.C.M.R. 1978).

8. After the victim arranged the date to meet the caller at "Alice's Pad" but prior to the time for the meeting, the victim received a telephone call from a man who stated his name was "Respess" and asked if the victim's husband had a box for him. This caller also stated that he was in the same unit that appellant was assigned to.

arranged for the next day, but this meeting was cancelled due to bad weather. A third meeting was then arranged for 1830 hours, 6 March 1978 at the same place on post. The victim waited approximately twenty minutes and then the appellant appeared, looked at the victim's vehicle and walked away. Shortly thereafter, the appellant was apprehended.

In his subsequent written statement executed after a proper warning (Pros. Exs. 1 & 2), the appellant admitted making about five telephone calls to the victim. In these calls he said he would like to meet her and asked her if she would make love with him. He also arranged to meet the victim in the parking lot at Alice's Pad, saw her there and later telephoned her. His stated reason for making these telephone calls was because her husband had been responsible for his receiving a counselling statement. The reason he made the date with the victim was to tell her how sorry he was for calling her. He did not approach her at the "Pad" because he was afraid to do so.

■ From the foregoing, we find the following elements of the criteria set out in *Relford* clearly support the conclusion that the obscene telephone communications were service-connected. Although the appellant reportedly placed all the calls away from the post, the calls were completed on the post. Hence, the offenses were committed at a place under military control. Further, the appellant's arrangements during some of these telephone calls for meetings with the victim were designed for an on-post locale. In fact, two out of the three scheduled meetings between the victim and the appellant occurred on post. Therefore, the appellant was not absent from the post at pertinent times. Additionally, the stated purpose of the appellant that the calls were in retaliation for corrective action taken by the victim's husband as a part of his official military duty constitutes a flouting of mili-

tary authority and was not entirely unrelated to the appellant's military duties. We also consider that telephone calls of this nature to dependent wives of servicemen who are currently away from their post on temporary military duties create a serious morale problem constituting a clear threat to the security and tranquility of the military community and can, under circumstances like these, have an adverse effect on military operations and the military mission. It is beyond question that servicemen on duty in far-flung places of the world have reason to expect that their dependents residing on military installations during their absence will find that military commanders are effectively maintaining law and order. Therefore, the military interest in deterring offenses of this type is distinct and greater than that of civilian authority. Accordingly, we conclude that service connection over these offenses was adequately established on the record.

With reference to the appellant's second contention that the Manual for Courts-Martial, United States, 1969 (Revised edition), (hereinafter MCM, 1969) unconstitutionally limits the obscene language offenses by gender,[9] we observe that Article 134, UCMJ, is on its face gender neutral. It prohibits all conduct that is palpably prejudicial to good order and discipline, brings discredit upon the armed forces, or contravenes a specific enactment of Congress. *United States v. Sadinsky,* 14 U.S.C.M.A. 563, 34 C.M.R. 343 (1964); *United States v. Holiday,* 4 U.S.C.M.A. 454, 16 C.M.R. 28 (1954); *United States v. Frantz,* 2 U.S.C.M.A. 161, 7 C.M.R. 37 (1953); para. 213*a,* MCM, 1969.

■ Although the reported cases of communicating obscene language have generally involved male perpetrators and female victims (*see United States v. Linyear,* 3 M.J. 1027 (N.C.M.R.1977), and cases cited there-

---

9. Paragraph 127*c,* MCM, 1969, prescribes the maximum punishment of a dishonorable discharge and confinement at hard labor for one year for the offense of communicating indecent, insulting or obscene language to a female of 16 years or over. Form No. 158, Appendix

6*c,* MCM, 1969, contains a suggested specification for this offense, and the Military Judges' Guide (DA Pam 27–9, 22 Oct 1969, para 4–158), contains instructions on the elements of this offense.

in), in *United States v. Jackson,* 12 C.M.R. 403 (A.B.R.1953), *pet. denied,* 13 C.M.R. 142 (CMA 1953) a male officer's uttering obscene language to an enlisted man was held to be a violation of Article 134, UCMJ. From our reading of the General Article (134), the Rules of Construction set out in 1 U.S.C. Sect. 1 (1976),[10] and the foregoing material, we conclude that no gender based classification is established and that both males and females may violate Article 134 and both may be victims of violations of that Article.

 Even if the offense of communicating obscene language protects only females, assuming that either males or females may perpetrate the crime, the appellant lacks standing to assert the rights of unprotected males. It has been consistently held that as long as both male and female perpetrators may equally violate a statute and be subject to like penalties, there is no denial of equal protection to a male because the statute only protects females. A male violating such a statute has no standing to raise the rights of unprotected males. *United States v. Green,* 554 F.2d 372 (9th Cir. 1977); *United States v. Garrett,* 521 F.2d 444 (8th Cir. 1975). We have no doubt that a female servicemember may be prosecuted for communicating indecent, insulting or obscene language to a female and suffer the same penalties as a male servicemember. Since no gender based classification is established, the appellant has not been denied equal protection of the laws.

The appellant's further contention that at most he should have been charged with a simple disorder in violation of Article 134 is also without merit, because the proof of record supports a more serious charge than that of simple disorder. Moreover his claim that his punishment would not have included a bad-conduct discharge

**10.** Chapter 1, Rules of Construction prescribe "In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words importing the masculine gender include the feminine as well . . . ."

**11.** Paragraph 127*c*, Section B, MCM, 1969, provides in part: "If an accused is found guilty of

if he had been charged with simple disorder overlooks the provision of Section B, paragraph 127*c*, MCM, 1969.[11]

The findings of guilty and the sentence are affirmed.

Chief Judge DE FIORI and Judge THORNOCK concur.

two or more offenses for none of which dishonorable or bad-conduct discharge is authorized, the fact that the authorized confinement without substitution for these offenses is six months or more will, in addition, authorize bad-conduct discharge and forfeiture of all pay and allowances."