**UNITED STATES, Appellee,**

v.

**Private E–2 Joleen M. TOMLINSON, SSN 587–94–7354, United States Army, Appellant.**

**SPCM 13581.**

U. S. Army Court of Military Review.

30 April 1979.

---

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Larry D. Anderson, JAGC, and Captain Donald J. Perrault, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major Michael B. Kennett, JAGC, and Captain Charles A. Cosgrove, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Senior Judge:

In a double assault upon her conviction and sentence,[1] the appellant insists that the court-martial below lacked jurisdiction to try her because:

a. The possession of 280 grams of marihuana with intent to distribute to military related personnel was an off-post offense.

b. There were no Women's Army Corps personnel on the military jury that sentenced her.

Appellant, a member of a military police company located at Fort Polk, Louisiana, maintained off-post quarters in nearby Leesville. She was apprehended at Fort Polk after having transferred marihuana to two confidential informants on post. At the subsequent off-post search of her quarters, which was conducted in conjunction with the Leesville police, 280 grams of marihuana were retrieved. Specification 4 of

the charge alleged wrongful possession at Leesville "with the intent to distribute to military related personnel on Fort Polk, Louisiana."

During the providence inquiry appellant stated that she intended to sell the marihuana on Fort Polk to active duty military personnel who were members of her military police company, as well as to members of other military units.

### I

She now, for the first time, complains that the Government has improperly attempted to confer upon her off-post possession of the drug a "service connection" by labeling it a threat to the military post. Conceding that she *intended* to sell to fellow soldiers at Fort Polk, she nevertheless contends that her subjective state of mind was insufficient to vest jurisdiction in the military for what would otherwise be a purely civilian offense. She points out that the Manual for Courts-Martial, United States, 1969 (Revised edition) and the Uniform Code of Military Justice contain no specifically enumerated "possession-with-intent" type offenses. Such offenses are historically creatures of legislatures and are accompanied by various presumption and inferences which generally flow from the quantity of the drug possessed. Congress, she asserts, has chosen not to establish graduations of punishment for differing conduct involving the same drug.[2]

Appellant argues further that the record of trial is devoid of any matter which could cause this court to conclude that the Army was able to demonstrate that the "military interest in deterring the offense is distinct from and greater than that of the civilian jurisdiction, as well as whether this distinct military interest can be vindicated adequately in the civilian courts . . .."

---

1. Pursuant to her pleas appellant was convicted by a special court-martial composed of officer members for the unlawful sale (2 specifications) and unlawful possession (2 specifications) of marihuana. She was sentenced to a bad-conduct discharge. The convening authority approved the sentence.

2. *See* paragraph 127c, MCM, 1969 which deals with the applicability and use of Table of Maximum Punishments.

*United States v. Alef*, 3 M.J. 414, 416 (C.M.A.1977).

## II

■ It is well established that the Government must affirmatively establish jurisdiction over drug offenses without recourse to traditional military law presumptions which have been found constitutionally insufficient to show "service connection." *United States v. Saulter*, 5 M.J. 281, 283 (C.M.A.1978); *United States v. Alef, supra; United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976); *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976). We, as appellate judges, are required to examine the issue of "service connection"[3] in accordance with the criteria set forth by the Supreme Court in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), in order to resolve questions of subject matter jurisdiction. It must be completed on a case-by-case, offense-by-offense basis. *United States v. Alef, supra*, at 416.

## III

■ Our reading of the record reveals the following facts which, in our view, establish the requisite "service connection." The marihuana for appellant's on-post sales came from the cache maintained in her Leesville apartment. Appellant, a member of a military police unit, planned to sell the marihuana found in her apartment to other service members in her unit, and to other service members located on Fort Polk. This was a flagrant flouting of military authority and a threat to the military post. Both appellant and her future purchasers were active duty personnel whose military status was known to appellant, a clear connection between her military duties and the crime. Appellant knew that the marihuana would

be introduced onto the military reservation—additional evidence of a threat to the post. Therefore, we believe that this was an offense in which the military interest in deterrence was distinct from and greater than that of the civilian jurisdiction. Accordingly, the *Relford* factors support military jurisdiction. In reaching this conclusion we have disposed of her "subjective state of mind 'intent'" argument in short order. Unquestionably, her intention was subjective. To all intents and purposes it always is. It means *to have in mind* a purpose or plan to do a specified thing or act in a specified manner. (Emphasis ours) *Webster's New World Dictionary of The American Language*, (College Edition) 1966. Her admission of her intention to sell to Fort Polk military personnel certainly dispelled any suggestion of innocent possession or exclusive personal use and nailed down the government's claim that it constituted a threat to the military post as distinguished from the civilian community. We interpret the language in Specification 4 which alleges possession of marihuana "with the intent to distribute to military related personnel on Fort Polk, Louisiana" as prudent jurisdictional pleading, and not as an attempt to plead an offense other than the possession of marihuana. *See Alef, supra*, at 419.

## IV

■ Paragraph 8–2 of Army Regulation 27–10, Military Justice, dated 26 November 1968 as amended by Change 16, dated 4 November 1975 [hereinafter AR 27–10] states:

> A general or special court to which charges against a member of the Women's Army Corps are referred will include Women's Army Corps personnel, if available, in its membership.[4]

3. "Service connection" is a shorthand characterization indicating the degree of the relationship between the crime and the military community. As these cases demonstrate, there must be a substantial nexus between the crime and the military before it is reasonable or appropriate for a military forum to try an accused and apply military law, in determining his guilt. The Supreme Court in *Relford* pointed out that this military nexus must be determined by an *ad hoc* analysis of the facts, and the nexus must be such that the military interest is paramount and cannot be vindicated in the civilian courts.

4. Appellant's trial began 12 June 1978 and concluded on 26 July 1978. On 28 April 1978, the positions of Director and Deputy Director, Women's Army Corps, were abolished (General

Appellant contends that this clear and concise directive establishes an affirmative obligation upon all convening authorities to seek out women to serve as members on courts convened to try women who are pending court-martial. In her case, she argues, this mandate was not satisfied. The record, though helpful, is not openly decisive. It contains many factual blind spots. There is no showing of availability, or lack thereof, of Women's Army Corps officers within the command.[5] Two of her commissioned jurors bore first names (Jerry and Tracy) that are common to both sexes. Further gender identification is absent save the opening remarks of opposing counsel in which each addressed the panel as "Gentlemen". We suspect that even the most reticent of the NOW generation pleaders would say that such prefatory reference reasonably identifies the panel as all male. Upon these debatable facts and premise we find that the panel contained no Women's Army Corps personnel in violation of AR 27–10.[6] However, this error is not jurisdictional in nature. Military regulation cannot affect statutory jurisdictional mandates. *United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A. 1978). As appellant neither avers nor shows a violation of Articles 25, 10 U.S.C. § 825 (who may serve on courts-martial) or 29 (absent and additional members), Uniform Code of Military Justice, there is no jurisdictional defect. Notwithstanding, we have tested the error for prejudice and have found none. The all-male jury adjudged, in our view, a most lenient sentence. Appellant, a member of a military police company of the Law Enforcement Command, yet a confessed distributor of drugs to fellow soldiers, surrendered no freedom, forfeited no pay, suffered no fine and escaped extra duty. It is inconceivable that a jury with one or more WAC officers would have shown any more kindly forebearance.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge DRIBBEN concurs.

FELDER, Judge, concurring:

The classic military definition of a threat is "an avowed present determination or intent to injure the person, property or reputation of another." An admission by a service member that her possession of marihuana was for the purpose of selling to fellow service members on a military installation is simply a threat to injure them and damage the reputation of the military community. As explained in *United States v. McCarthy*, 2 M.J. 26, 29 (C.M.A.1978), military interest is pervasive when the sale of drugs occurs off-post, the criminal venture is developed through military association and the most likely recipients of contraband would be soldiers on post. A combination of this factor with the others enumerated in the principal opinion establish service connection.

I concur with the majority in the resolution of all the issues and the disposition of this case.

Order 7, dated 25 April 1978, Headquarters, Department of Army). Less than six months later, on 20 October 1978 (General Order 20, *supra*), the Women's Army Corps was disestablished.

The final page of the Corps' heritage was written on 28 March 1979 at Fort McClellan's George E. Marshall parade field when the Corps flag stood its final review and will now be permanently enshrined in the Women's Army Corps Museum at Fort McClellan. The Pentagram News, March 29, 1979, at 2. Like the French Foreign Legion the Women's Army Corps has folded its tents and silently stolen away.

5. Appellant did not request that enlisted members be detailed to the panel that sentenced her. Without such a written request the convening authority was powerless to do so. Article 25(c)(1), UCMJ.

6. We note that the requirement, in question here, has since been deleted from AR 27–10. Change 18, Chapter 8, Army Regulation 27–10, dated 1 January 1979.