**UNITED STATES, Appellee,**

v.

**Private First Class Lawrence D. SWAVE-LY, SSN 574–30–3267 United States Army, Appellant.**

**CM 442565.**

U. S. Army Court of Military Review.

9 Feb. 1983.

Captain Michael D. Graham, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, and Captain Thomas R. Peppler, JAGC.

Captain Michael S. Child, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Glenn D. Gillett, JAGC.

Before CLAUSE, COKER and HANFT, Appellate Military Judges.

OPINION OF THE COURT

COKER, Judge:

Appellant was charged with possession, sale and transfer of marijuana on four separate occasions (6 April, 22 April, 4 May, and 20 May 1981) and with a ninety-nine day absence without leave. In accordance with his pleas, he was convicted by a military judge sitting as a general court-martial of the four possession and sale specifications and the AWOL. The four transfer specifications were dismissed by the court. The primary issue before this Court is whether the court-martial had jurisdiction over the offenses arising from the second and third sales. We hold that there was jurisdiction.

The 6 April 1981 sale occurred on Fort Richardson and was a sale of one pound of marijuana to an undercover agent of the Anchorage Police Department, Alaska. The 22 April 1981 and 4 May 1981 sales occurred off-post, in the city of Anchorage, and each was a sale of five pounds of marijuana to the same city police agent who made the first buy. The 20 May 1981 sale occurred on Fort Richardson and was a sale of one ounce of marijuana to an undercover military police investigator.

There is no factual dispute between the parties. The Fort Richardson Joint Drug Suppression Team (JDST) received information that the appellant had large amounts of marijuana for sale. The JDST did not have sufficient funds to make a large buy and asked for the assistance of the Anchorage Metropolitan Drug Enforcement Team (METRO). The 6 April 1981 sale was then arranged, a METRO agent was introduced to the appellant by the JDST informant, and the transaction was completed under JDST surveillance. At this time, the appellant gave his barracks

phone number and the phone number of his parents' home in Anchorage, Alaska, to the METRO agent. (The Court is aware that this fact, stipulated to by the appellant, is contradicted in part by the sworn testimony of appellant given on the motion to dismiss for lack of jurisdiction. In his testimony he stated that his friend, the JDST informant, gave both numbers to the METRO agent: the barracks' number before the 6 April 1981 meeting, and the home number during that meeting). The appellant spent some of his off-duty time at his parents' home, as well as maintaining a room in the barracks on Fort Richardson. All contacts for the 22 April 1981 and 4 May 1981 transactions were made with appellant at his parents' home at times when he was in an off-duty status. The METRO agent was clearly a civilian, professed to be a civilian, and stated he wanted the marijuana for resale in Soldotna, Alaska, a distance of one hundred fifty miles from Fort Richardson. The actual sales took place in Anchorage, Alaska at different locations, three to six miles from Fort Richardson. These locations were occasionally but not frequently visited by military personnel. At each transaction, appellant procured six pounds of marijuana from his source, sold five pounds to the METRO agent, and reserved one pound for his own drug business. At the 4 May 1981 transaction, appellant stated that he was making a lot of money from selling marijuana. He was concerned from the 6 April 1981 sale that his buyer, the METRO agent, was from Soldotna, Alaska, since those sales in a distant area would not be in competition with his own drug sales. Both transactions were observed by JDST personnel. Appellant was indicted and subsequently arrested by the authorities of the city of Anchorage for the 22 April 1981 and 4 May 1981 sales. The record provides no information on why he was not brought to trial by that jurisdiction. Preferral of charges by the military was delayed until the JDST and METRO could finish their investigations that grew out of the transactions with appellant. Appellant alleges that these facts are insufficient to vest jurisdiction in the military over the 22 April 1981 and 4 May 1981 sales, as the incidents lacked any service connection as required by *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

The jurisdictional averment in the specifications alleging the 22 April 1981 and 4 May 1981 sales provide, "The accused, an active duty servicemember, sold the marijuana to the same persons to whom he had sold one pound of marijuana on 6 April 1981 on Fort Richardson, Alaska." Appellant argued at trial and before this Court that this averment was insufficient as a matter of law to establish subject matter jurisdiction as required by *United States v. Alef,* 3 M.J. 414 (C.M.A.1977).

Without question, the abuse of drugs can and does have a deleterious impact on the ability to accomplish the mission of the armed forces. Aggressive action by all levels of command continues in an effort to alleviate and solve this problem. *See* Amendments to the Military Selective Service Act of 1967, § 501, Pub.L. No. 92–129, 85 Stat. 348, 361 (1971); Army Regulation 600–50, *Standards of Conduct for Department of Army Personnel,* 15 August 1982; Army Regulation 600–85, *Alcohol and Drug Abuse Prevention and Control Program,* 1 December 1981. The extreme seriousness of the problem has received judicial recognition. *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. Trottier,* 9 M.J. 337 (C.M. A.1980). Continued Congressional attention and concern are evident. *See Drug and Alcohol Abuse in the Armed Services: Joint Hearing Before the Subcomm. on Manpower and Personnel and the Subcomm. on Preparedness of the Senate Comm. on Armed Services,* 97th Cong., 1st Sess. (1982); *Drug Abuse in the Military— 1981: Hearing before the House of Representative Select Committee on Narcotics Abuse and Control,* 97th Cong. 1st Sess. (1981). *See also* 21 U.S.C. §§ 801–904 (1976 and Supp. II 1978); paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition) (as amended by Executive Order No. 12383, 23 September 1982).

■ This overriding concern does not, of course, grant automatic jurisdiction to the military over any drug offense. The offense committed by the servicemember must have a sufficient connection to the military service to warrant disposition by the military judicial system rather than by the indictment and jury trial system of the civil courts. *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Supreme Court in *O'Callahan* set out and subsequently amplified in *Relford, supra,* a set of indicators or criterion for determining service connection. Several of the twelve indicators are present in the appellant's case. While the offenses occurred during peacetime, the ability of the nation to fully protect, prepare, and implement its authority under its war powers, is threatened by servicemembers who engage in large scale commerce of illegal drugs. Further, a civilian court was present and available to prosecute only the 22 April 1981 and 4 May 1981 sales; it could not prosecute the 6 April 1981 and 20 May 1981 sales; it did not have the legal capacity to address and dispose of the totality of the appellant's course of criminal conduct. A civilian prosecution would necessarily have doubled the jeopardy of the appellant, particularly in view of the serious military offense (AWOL) committed by the appellant.

■ It is the totality of the appellant's criminal conduct that most clearly establishes the service connection of the offenses. The appellant by his own admissions was actively engaged in the commerce of marijuana on a continuing and large scale basis. He was operating a retail and wholesale marijuana business, using typical business approaches of restricting competition, acting to make profits, and accepting new customers. The headquarters of his business was his barracks room on Fort Richardson with a branch office at the home of his parents. The facts show that he maintained his product in his barracks room or in his truck that he used on the post. His business activities off-post were primarily to replenish his stock of goods. By any points of contact test, the barracks room on

Fort Richardson was the situs of his business and the 22 April 1981 and 4 May 1981 sales were only individual transactions conducted in furtherance of his business. His business was a direct threat to the good order and discipline of Fort Richardson. He had no means of limiting the resale of drugs to civilians only and no apparent interest in doing so except to the extent that it might interfere with his own sales. It is hard to imagine conduct that would flout military authority more than did the extensive and cavalier conduct of the appellant in carrying on his illegal drug business. The real victim in this case was the military community of Fort Richardson, the targeted group of appellant's commercial activities. The military commander of Fort Richardson had the direct responsibility for maintaining order on that installation and was charged with protecting the security of persons on the enclave from the illegal and aggressive business activities of the appellant. It is noted that the appellant, when off-post for the contacts and sales of 22 April 1981 and 4 May 1981, was not absent from the post in the sense of "leave". His "absence" or "pass" was exactly the same as any soldier after normal duty hours or on Saturday and Sunday.

As stated in *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975) the issue of service connection "turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." The prosecution by the military of the 22 April 1981 and 4 May 1981 sales was a necessary interdiction of the commerce in drugs operated by the appellant that directly affected the personnel of Fort Richardson. His extensive commercial activities posed a grave and immediate threat to the security of Fort Richardson and its personnel. *United States v. Trottier,* 9 M.J. 337, 349, 351 (C.M.A.1980).

The jurisdictional averment for the 22 April 1981 and 4 May 1981 sales can be interpreted most reasonably as a statement of the continuation of an illegal business transaction, obviously and admittedly service connected, initiated on the military installation, and continued at off-post locations. While the averment might have been more artfully drafted, it comports with the requirement of *Alef,* 3 M.J. at 419, to provide the appellant with sufficient notice upon which to challenge the jurisdictional basis of his prosecution.

The findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE concurs.

HANFT, Judge, concurring:

The facts establish that Swavely, a soldier, operated a business of selling drugs within and around a major military installation. It logically follows that all drug offenses consummated by Swavely as part and parcel of that business have service connection and are subject to prosecution in military criminal courts. *See United States v. Trottier,* 9 M.J. 337 (C.M.A.1980). Thus, I join my brothers in affirming the convictions.