**UNITED STATES**

v.

**Frank C. GRAHAM, 206 42 3950, Lieutenant (junior grade) (0–2), U. S. Navy.**

**NCM 79 0682.**

U. S. Navy Court of Military Review.

Sentence Adjudged 20 Oct. 1978.

Decided 31 March 1980.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LCDR Bradley S. Beall, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and GREGORY and GLADIS, JJ.

GLADIS, Judge:

The accused was convicted pursuant to his pleas at a general court-martial bench trial of sixteen specifications alleging either possession or use of marijuana and one specification of conduct unbecoming an officer, in violation of Articles 92 and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 933; he was sentenced to dismissal and total forfeitures.

Among other things, the accused contends that he was tried over his objection on unsworn charges and that the court-martial lacked jurisdiction over several offenses which were consummated off-base. We affirm.

I

UNSWORN ADDENDUM

In an effort to comply with the requirements of *United States v. Alef*, 3 M.J. 414

(C.M.A.1977), the trial counsel provided an addendum to the charge sheet which contained additional jurisdictional allegations concerning specifications 1 through 6, 11 and 12 of Charge I. Defense counsel objected at trial because the addendum was unsworn. The military judge overruled the objection because the matters in the addendum did not constitute elements of the offenses. *Cf. United States v. Rollins*, 7 M.J. 125 (C.M.A.1979) (subject matter jurisdiction is a question for the military judge, not the triers of fact) (dictum); *United States v. Bailey*, 6 M.J. 965 (N.C.M.R.1979) (en banc) (personal jurisdiction is not an element of the offense, but an interlocutory question).

The convening authority disapproved the portion of the findings relating to the addendum on the advice of his staff judge advocate.

■ In this case the original specifications, supplemented by a stipulation of fact, enclosure (1) to Appellate Exhibit I, satisfy the requirements of *United States v. Alef, supra,* for notice and establishing jurisdiction on the record. *United States v. Blake,* 6 M.J. 690 (N.C.M.R.1978), *pet. den.,* 7 M.J. 5 (C.M.A.1979). The addendum in the nature of a bill of particulars was surplusage. There was no requirement that it be sworn. *Cf. United States v. Lewis,* 5 M.J. 712 (A.C. M.R.1978), *pet. den.,* 6 M.J. 294 (C.M.A. 1979). Contrary to the contention of the accused, its disapproval by the convening authority does not require disapproval of the findings of guilty of the specifications.

## II

## JURISDICTION

■ The accused contends that the court-martial lacked jurisdiction over those offenses committed off-base during non-duty hours. In order to determine whether an offense committed off-base by a service member is service connected within the meaning of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and, consequently, whether it is triable by court-martial, the jurisdictional criteria

enunciated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), must be carefully weighed. *United States v. Moore,* 1 M.J. 448 (C.M.A.1976). The issue turns on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be adequately vindicated in civilian courts. *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Jurisdiction may not be predicated solely on the military status of the wrongdoer and the victim. *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976). Merely because the recipient of the contraband is a service member is insufficient, in and of itself, in drug cases to establish service connection. *United States v. McCarthy,* 2 M.J. 26 (C.M.A.1976). Off-base, off-duty use of marijuana by serviceman, standing alone, does not establish court-martial jurisdiction. *United States v. Williams,* 2 M.J. 81 (C.M.A. 1976). An *ad hoc* approach must be taken in each case, balancing the significant jurisdictional criteria.

In *United States v. McCarthy, supra,* the Court of Military Appeals had occasion to consider whether the off-base transfer of three pounds of marijuana to a fellow serviceman was service connected. Weighing the *Relford* criteria, the Court found that the following four factors were sufficient to vest a court-martial with jurisdiction:

1. The formation of the criminal intent for the offense on-post;

2. The substantial connection between the defendant's military duties and the crime;

3. The transferee's being engaged in the performance of military duties, known to the defendant, at the time the agreement to transfer was reached;

4. The threat posed to military personnel, and hence the military community itself, by the transfer of a substantial quantity of marihuana to a fellow soldier who was a known drug dealer.

In *United States v. Conn*, 6 M.J. 351 (C.M.A.1979), the Court found that a court-martial lacked jurisdiction to try the executive officer of an Army unit for off-base use of marijuana in the presence of enlisted members from his unit and civilians in a civilian's New York City apartment far distant from the unit, in the absence of evidence that the use was the product of military associations on-base or in the performance of military duties, that the accused had not already blended into the civilian community at the time of the offense, or that the intent to commit the act had been formed on-base or during the performance of his duties.

Analysis of the *Relford* factors establishes jurisdiction over the offenses consummated off-base in this case. *United States v. McCarthy, supra. United States v. Conn, supra,* is distinguishable. Here the offenses were related to dereliction by the accused in the performance of military duties and engendered a pervasive military interest in deterring them which could not be adequately vindicated in the civilian courts.

█ While the accused's ship was at Annapolis, Maryland participating in the Naval Academy graduation, the accused, on liberty in civilian clothes, smoked marijuana in the parking lot of a civilian bar with fifteen junior enlisted men from the ship, some of whom were in his division. The men were aware that the accused was a commissioned officer. He was aware that they would return to the ship afterwards. Charge I, specifications 1 and 2. These offenses posed a substantial threat to military discipline and the mission of the ship. When a ship visits a port away from home, her crew members often do not blend into the civilian community. Offenses committed by them injure the good will the visit is intended to engender. The actions of the accused posed a threat to the ability of the ship to deploy and operate in the local area or elsewhere. Had fifteen crew members and a division officer been arrested by civilian authorities and required to answer for their offenses in a city distant from their homeport, their absence would have interfered with the ship's mission. The prospect of the return of fifteen crew members under the influence of marijuana also constituted a threat to the ship's discipline and security. The accused violated his duty to enforce the laws and regulations of the Navy and to set a good example. U. S. Navy Regulations, 1973, Articles 1101 and 1102.[1] Under the circumstances of this case, the violation of the accused's military duties and the threat to the military community and mission are sufficient to establish jurisdiction.

█ On board ship during working hours, while in a duty status, the accused invited junior enlisted men in his division to smoke marijuana at his off-base apartment. He smoked marijuana with them there. Charge I, specifications 3, 4, 11, 12. The formulation of the intent on board ship, the connection with the accused's duties, and the violation of his duties establish jurisdiction.

1. Article 1101 provides:
    Every officer in the naval service shall acquaint himself with, obey, and, so far as his authority extends, enforce the laws, regulations and orders relating to the Department of the Navy. He will faithfully and truthfully discharge the duties of his office to the best of his ability in conformance with existing orders and regulations and his solemn profession of the oath of office. In the absence of instructions he shall act in conformity with the policies and customs of the service to protect the public interest.
Article 1102 provides:
    All commanding officers and others in authority in the naval service are required to show in themselves a good example of virtue, honor, patriotism, and subordination; to be vigilant in inspecting the conduct of all persons who are placed under their command; to guard against and suppress all dissolute and immoral practices, and to correct, according to the laws and regulations of the Navy, all persons who are guilty of them; and to take all necessary and proper measures, under the laws, regulations, and customs of the naval service, to promote and safeguard the morale, the physical well-being, and the general welfare of the officers and enlisted persons under their command or charge. (10 USC 5947).

■ The accused also smoked marijuana at his off-base apartment with a junior enlisted man from his division whom he had invited to work on his car. The accused subsequently smoked marijuana with him on board ship. Charge I, specifications 5 and 6. The violation of the accused's duty to enforce Navy regulations and set a good example coupled with the subsequent materialization of the threat to military discipline establish jurisdiction over the offenses consummated off-base.

Thus, we conclude that these offenses were service-connected within the meaning of *Relford* and triable by court-martial.

The remaining assignment of error does not warrant discussion. Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Judge GREGORY concurs.

DUNBAR, Senior Judge (concurring):

With respect to specifications 1, 2, 3, 4, 5, 6, 11 and 12 of Charge I, certain jurisdictional facts were added to the original charge sheet, in the form of footnotes, after the charges had been signed and sworn to. At trial, the military judge concluded that the supplementary jurisdictional footnote information was surplusage and did nothing to add or detract from the charge. The staff judge advocate in his review agreed; but, under the mistaken belief that the surplusage should have been sworn to, persuaded the convening authority to approve the findings and at the same time to disapprove the surplusage jurisdictional information.

Despite his pleas of guilty, appellant requests a rehearing, contending that he was tried, after objection, on unsworn charges, citing Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a), and paragraph 29e, *Manual for Courts-Martial, 1969 (Rev.)*. He also advances the theory that, when the convening authority disapproved the "surplus" language, he in effect disapproved the findings to the specifications because the jurisdictional surplusage was an integral part of the specifications as

required by *United States v. Alef*, 3 M.J. 414 (C.M.A.1977).

Nevertheless, the Government, in rebuttal to appellant's assertions, relies on *United States v. Lewis*, 5 M.J. 712 (A.C.M.R. 1978), *pet. denied*, 6 M.J. 294 (1979), in which the Army Court of Military Review stated:

> *Assuming, arguendo, that the charges were altered to add the Alef language after they were served on the appellant, still we find no error. Such alterations amount to amendments of the specifications.* The United States Court of Military Appeals stated in *United States v. Krutsinger*, 15 U.S.C.M.A. 235, 237, 35 C.M.R. 207, 209 (1965):
>
> > A specification can be amended any time before findings. *United States v. Squirrell*, 2 U.S.C.M.A. 146, 7 C.M.R. 22; see also Rule 7(e), Federal Rules of Criminal Procedure. But the scope of amendment is limited. Broadly, the Manual for Courts-Martial, United States, 1951, provides that the amendment cannot "include any person, offense, or matter not fairly included in the charges as preferred." *Id.*, paragraphs 33d and 35a.[5] Judicial decision
>
> > [5] The same citations are applicable in the current Manual for Courts-Martial, United States, 1969 (Revised edition).
>
> > has provided further specificity to the limitation. It is now well-settled that an amendment cannot result in: (1) a different or more serious offense; (2) in raising a substantial question as to whether prosecution is barred by the statute of limitations; or, (3) in misleading the accused. *United States v. Johnson*, 12 U.S.C.M.A. 710, 31 C.M.R. 296.

*Id.* at 714 (emphasis added).

The government states that none of the prohibitions enumerated in *Krutsinger* are present in the present case. I concur. This Court has previously commented on the heterogeneous aggregation of pleading information and footnote guidance contained in *Alef* which had the effect of supplanting and rendering chaotic the established pleading practices of the military justice system.

This case is surely another example of the problems set in motion by the *Alef* decision. Nonetheless, as the Government points out, the avowed purpose of *Alef* was to satisfy through pleadings or a "bill of particulars" the lack of notice of jurisdiction to an accused perceived in military pleadings. We know of no requirement that a bill of particulars would have to be in the form of a sworn document. Bills of particulars, as such, are foreign to military pleading procedures.

Logically, therefore, the addendum in this case was tantamount to a bill of particulars as envisioned by the Court of Military Appeals and satisfactorily put the accused on notice regarding jurisdictional facts, regardless of whether the addendum was sworn to before trial or disapproved erroneously by the convening authority after trial. I find, therefore, that the charges were properly drafted and the surplusage addendum information satisfactorily served to clear up any possible issues as to jurisdiction.

Appellant also contends that his court-martial lacked jurisdiction over specifications 1, 2, 3, 4, 5, 6, 11 and 12 of Charge I and the recited portions of Charge II. The specifications alluded to are of two categories; that appellant smoked marijuana with enlisted men away from the ship without previously planning to do so, and, that additional similar sessions occurred at his apartment with enlisted men at his express invitation. Appellant claims these alleged offenses are not triable by court-martial since they occurred off-base during non-duty hours. The Government's brief directs our attention to the Court of Military Appeals' decision in *United States v. Conn*, 6 M.J. 351, 353 (C.M.A.1979). Therein, it was stated:

> A second theory proffered by the Government on appeal attempts to satisfy the jurisdictional holding of *United States v. Saulter, supra.* The Government counsel argues that the appellant's on-duty status *as his unit's executive officer* enabled him to form "military friendships" with service members which pre-

cipitated his trip to New York and occasioned the commission of the crime charged in the presence of the above-mentioned service members. Such a theory, though on its face attractive, fails to embrace a sufficient modicum of specificity to meet the standards set out in *Relford. See United States v. Wilson*, 2 M.J. 24, 26 n.2 (C.M.A.1976). Moreover, the stipulations of fact contained in the record of trial do not clearly establish that at the time of this particular offense *the appellant had not already blended into the civilian community* or that the criminal intent to commit this particular act had been previously formed on-base or during the performance of his duties. *See United States v. McCarthy*, 2 M.J. 26, 29 (C.M.A.1976). Accordingly, the argument is found without merit.

(Emphasis supplied.).

The above language of the High Court seems to imply that a military officer can "blend" into the civilian community during his off-duty hours and thereby immunize himself from his military responsibilities. I believe this Court should take forceful exception to such a fanciful and imaginative rationalization and at this time reaffirm the traditional military position that an officer of the United States Armed Forces is on duty 24 hours a day as far as his inherent military responsibilities are concerned; and, a "commissioned officer's" conscious participation in off-base marijuana sessions with known enlisted members of his command, in flagrant violations of service regulations, is service connected as a matter of law. I see no reason to enter into an extended analysis of civilian and military jurisdictional opinions to reach or support such an obvious legal conclusion.

In view of the foregoing, I concur with the majority in affirming the findings and sentence as approved below.