**UNITED STATES**

v.

**Stephen W. SHEA, 027 40 7332, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 82 0558.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 30 July 1981.

Decided 25 Oct. 1982.

LT Stephen R. Cochell, JAGC, USNR, Appellate Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before SANDERS, Senior Judge, and BOHLEN and MICHAEL, JJ. ·

MICHAEL, Judge:

At a special court-martial, military judge alone, appellant, pursuant to his pleas, was convicted of two specifications alleging unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886, one specification alleging wrongful appropriation in violation of Article 121, UCMJ, 10 U.S.C. § 921, and twenty specifications alleging forgery in violation of Article 123, USMJ, 10 U.S.C. § 923. The military judge sentenced appellant to confinement at hard labor for 90 days, forfeitures of $200 pay per month for three months, reduction to pay grade E–1, and a bad-conduct discharge. The sentence was approved by the convening authority, except for confinement in excess of 75 days which he suspended for one year from the date of his action because of appellant's compliance with a restitution provision contained in the pretrial agreement. The supervisory authority approved the sentence as approved by the convening authority.

Appellant raises three assignments of error for review by this Court. We disagree with the assignments raised and summarily reject Assignments of Error II and III. The first assignment, however, merits discussion:

THE COURT–MARTIAL THAT TRIED APPELLANT LACKED SUBJECT MATTER JURISDICTION OVER THE OFFENSES IN ADDITIONAL CHARGE III AND THE 20 SPECIFICATIONS THEREUNDER.

Additional Charge III, to which appellant pleaded guilty at trial, consists of twenty specifications alleging separate instances of forgery to obtain gasoline and tires with an aggregate value of approximately $500.[1] The offenses, facilitated by the wrongful appropriation of a fellow servicemember's oil company credit card on board Marine Corps Air Station, El Toro, Santa Ana, California (the subject of specification 1, Additional Charge II), transpired off-base at civilian service stations. The cardholder, a Marine from appellant's squadron, paid the creditor oil company the liability incurred by these transactions.

Appellant asserts that his court-martial lacked subject-matter jurisdiction over these forgery offenses because they were committed off-base. We disagree with this assertion and specifically find that the court-martial had jurisdiction over these violations of the UCMJ.

■ At first glance, it appears that there may be some merit in appellant's position attacking the exercise of court-martial jurisdiction over the instant forgery offenses. We are not at all persuaded by the arguments postulated by the Government to the effect that United States v. Alef, 3 M.J. 414 (C.M.A.1977), Judge Mahoney's concurrence in United States v. Lockwood, 11 M.J. 818, 820 (A.F.C.M.R.1981), and our decision in United States v. Jaakola, No. 79 0857 (NCMR 30 November 1979), stand for the proposition that an accused cannot assert jurisdiction on review when the issue was not raised at trial below. Those cases are concerned only with the appropriate timing of a defense challenge to the sufficiency of the pleadings to allege jurisdiction. See United States v. Alef, supra at 419 n. 18.[2] We cannot accept a more expansive interpretation, for to do so would infringe upon the long-established principle that subject-matter jurisdiction is never waived by a military accused. United States v. Garcia, 5 U.S.C.M.A. 88, 17 C.M.R. 88 (1954).

■ For an offense committed by a member of the military to fall within court-martial jurisdiction, the offense must be "service connected". O'Callahan v. Parker, 395 U.S. 258, 272, 89 S.Ct. 1683, 1690, 23 L.Ed.2d 291 (1969); United States v. Trottier, 9 M.J. 337, 340 (C.M.A.1980). The Supreme Court in Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), in an attempt to clarify the uncertainty caused by the then-unfamiliar term "service connected," enumerated several "factors" and "considerations" to aid courts in their determination of whether an offense is within the jurisdiction of a military tribunal. See United States v. Trottier, supra at 340–41. "What Relford makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial." United States v. Moore, 1 M.J. 448, 450 (C.M.A. 1976).

1. In a stipulation of fact appended to the pretrial agreement and examined during the providence inquiry (R. 37; 38), appellant admitted to purchases totalling approximately $650.00.

2. The accused in United States v. Jaakola, supra, after pleading guilty to the wrongful appropriation of a vehicle, questioned jurisdiction for the first time on review on the ground that the providence inquiry was somewhat vague in determining "when and where the specific intent to wrongfully take or withhold the vehicle occurred." Id., slip opinion at 2. The Court, citing United States v. Alef, supra, correctly found that the trial court level is the proper forum for an accused to contest the factual basis for establishing jurisdiction in a guilty plea case. Id. Here, appellant is content to be bound by the uncontested facts alleged below and established during the providence inquiry, but asserts that those uncontroverted facts fail to support jurisdiction.

While the *Relford* factors remain intact as the analysis to employ in determining whether a court-martial has subject-matter jurisdiction, the Supreme Court in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), emphasized a more flexible application of those factors and set out the decisive criterion for the exercise of jurisdiction:

> [The issue of service connection] turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society and on whether the distinct military interest can be vindicated adequately in civilian courts. These are matters of judgment that often will turn on the precise set of facts in which the offense has occurred.

*United States v. Trottier, supra* at 343, quoting *Schlesinger v. Councilman, supra,* 420 U.S. at 760, 95 S.Ct. at 1314. *See United States v. Lockwood*, 11 M.J. 818 (A.F.C.M.R.1981); *United States v. DeCoster,* 11 M.J. 775 (AFCMR 1981); *United States v. Graham*, 9 M.J. 556 (N.C.M.R. 1980). This flexible application of the *Relford* test reflects a distinct change in attitude by the Supreme Court as to the ability of military courts to protect a servicemember's constitutional rights, *see United States v. Trottier, supra* at 343–344 n. 17, and acknowledges a less-restrictive view of the limits of court-martial jurisdiction.

■ With this in mind, we conclude that forgeries and other property offenses where the victim is a fellow servicemember may be sufficiently service-connected to support court-martial jurisdiction. While jurisdiction cannot be predicated solely upon the military status of the victim of the offense, *United States v. Hedlund*, 2 M.J. 11, 14 (C.M.A.1976); *United States v. Graham, supra* at 558, the serious negative impact that such property offenses indisputably have on morale, good order, and discipline within a command and on an individual servicemember's performance may establish the requisite service-connection.

■ We observe that, although the forgeries occurred in the civilian community, they redounded as an indebtedness against the credit of the servicemember whose credit card was unlawfully used. Whether or not the entire indebtedness was wholly enforceable against the servicemember-victim, his credit standing clearly was jeopardized. We are not informed, but we may well imagine that the payment of these fraudulent charges in excess of $500.00 (*see* footnote 1) in order to redeem his good credit caused the victim considerable worry and inconvenience and detracted from his ability to meet his other financial obligations. The occasion certainly existed for letters of indebtedness to have been written to the victim's command, resulting in an administrative burden to command as well as severe morale degradation to the victim. These forgeries thus carried at their commission a potential direct, negative impact on military efficiency and readiness through distraction of the victim and his superiors from the proper performance of their duties and established a primary interest in the military in the prosecution of the perpetrator. Clearly, the servicemember-victim was sufficiently concerned about the non-return of his credit card—which by its very nature implies concern for the credit card's use—that he made repeated requests over an extended period for its return. These requests were answered by appellant with mere temporizing excuses (R. 16–18). We hold, therefore, that the requisite service-connection has been established.

We observe, further, that the wrongful appropriation of the gasoline credit card, to which appellant pleaded guilty in Additional Charge II, specification 1, is unquestionably within the prosecutorial jurisdiction of a naval court-martial and is intimately tied to the forgeries which are the subject of the assignment of error. Appellant would not have been able to commit the forgery offenses had he not wrongfully appropriated the credit card. It makes little sense and would hardly have been advantageous to appellant to have been the defendant in two separate criminal prosecutions—one mili-

tary and one civilian—for these related crimes. This intimate connection with the wrongful appropriation offense weighs heavily in favor of the primary interest of military authorities in exercising court-martial jurisdiction.

The Court of Military Appeals, in several cases decided before *United States v. Trottier, supra,* has held that off-base forgeries are not subject to court-martial jurisdiction. *See United States v. Hopkins,* 4 M.J. 260 (C.M.A.1978); *United States v. Vick,* 4 M.J. 235 (C.M.A.1978) (summary disposition); *United States v. Sims,* 2 M.J. 109 (C.M.A. 1977); *United States v. Uhlman,* 1 M.J. 419 (C.M.A.1976). It is apparent from a reading of those decisions that *Hopkins, Vick,* and *Uhlman* are distinguishable from the instant case in that the victims of the forgeries committed in those cases were either civilians or civilian institutions. While *United States v. Sims, supra,* does involve an off-base forgery, committed against a military victim, we believe that the decision in that case was born of a rigid application of the *Relford* factors and focused on the rejection of an Army Court of Military Review theory of a "total criminal enterprise" in favor of a case-by-case *Relford* analysis. We also consider that the reluctance to acknowledge a paramount military interest in an off-base offense, as reflected in *Sims,* has been abandoned by the Court of Military Appeals in the more flexible approach adopted in *United States v. Trottier, supra. See also United States v. DeCoster, supra.*

Accordingly, we find that the trial court properly exercised jurisdiction over the offenses of which appellant was convicted. Upon examination of the record of trial, the assignments of error asserted by appellate defense counsel, and the Government's reply thereto, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of appellant was committed. The findings and sentence as approved on review below are therefore affirmed.

Senior Judge SANDERS and Judge BOHLEN concur.