UNITED STATES

v.

Aaron E. MATTHEWS, 579 78 8125, Private First Class (E–2), U.S. Marine Corps.

NMCM 82 0464.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 23 June 1981.

Decided 28 Dec. 1982.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

LT Louis F. Sadler, JAGC, USNR, Appellate Defense Counsel.

LT Joseph J. Portuondo, JAGC, USNR, Appellate Government Counsel.

Before SANDERS, Senior Judge, and BOHLEN and MICHAEL, JJ.

MICHAEL, Judge:

Appellant, pursuant to mixed pleas, was convicted at a general court-martial, military judge alone, of five specifications alleging violations of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886; one specification alleging violation of Article 95, UCMJ, 10 U.S.C. § 895; three specifications alleging violations of Article 107, UCMJ, 10 U.S.C. § 907; fourteen specifications alleging violations of Article 123, UCMJ, 10 U.S.C. § 923; forty-four specifications alleging violations of Article 123a, UCMJ, 10 U.S.C. § 923a; and three specifications alleging violations of Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced appellant to confinement at hard labor for fifteen months, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the findings and sentence as adjudged.

Several assignments of error are raised by appellant for consideration by this Court. We will address the errors presented seriatim, with the exception of Assignment of Error IV, which is rendered moot by our decision regarding Assignment of Error I, and Assignments of Error VI, VII, VIII, and IX, which we summarily reject.

I

Appellant asserts in his first assignment of error that the military tribunal that tried him improperly exercised subject-matter jurisdiction over the offense alleged in specification 5 of Charge VII. That specification charged appellant with receipt of stolen money orders in violation of Article 134,

UCMJ. It is clear from the record of trial that the stolen money orders were purchased by appellant off-base in the vicinity of Washington Boulevard, Baltimore, Maryland. These money orders were subsequently negotiated on board various military installations in the Washington, D.C., area.

The Supreme Court in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), set forth the requirement that an offense must be "service connected" for a military court to exercise subject-matter jurisdiction over that offense.

> [The issue of service connection] turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society and on whether the distinct military interest can be vindicated adequately in civilian courts. These are matters of judgment that often will turn on the precise set of facts in which the offense has occurred.

*Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975); *United States v. Trottier,* 9 M.J. 337, 343 (C.M.A.1982); *United States v. Shea,* 14 M.J. 882 (N.M.C.M.R.1982). While the Supreme Court in *Schlesinger v. Councilman, supra,* "acknowledges a less-restrictive view of the limits of court-martial jurisdiction," the factors and considerations enumerated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), remain intact as the analysis to employ in determining whether the criterion of *Schlesinger* is met. *See United States v. Shea, supra.*

In analyzing the facts and circumstances of the instant case under the guidelines of *Relford v. Commandant, supra,* and *Schlesinger v. Councilman, supra,* we adopt for purposes of analysis the following factors from appellant's brief:

> a) appellant may have been in an unauthorized absence status (no actual date of purchase was ever established);

> b) the purchase of the money orders was committed off-base;

> c) the purchase was not done at a place under military control;

> d) the commission of the offense was within the territorial limits of the United States and [not] in an occupied zone of a foreign country;

> e) its commission was in peacetime and had no relation to the war-making powers;

> f) the purchase of the money orders was unrelated to the appellant's military duties;

> g) the victim was not in the performance of any military duty;

> h) civilian courts were present and open in Baltimore to try this offense;

> i) the purchase of the stolen money orders was unrelated to military authority and involved no flouting thereof;

> j) the offense may have posed a threat to the security of a military base if the appellant, at the time of the purchase, had intended to cash all of the money orders at various military exchanges;

> k) the purchase of the money orders did not involve the violation of any military property;

> l) the offense of knowingly purchasing stolen property is one traditionally prosecuted in civilian courts and is not one peculiarly military in nature.[1]

▪ In our view, considering the above-listed factors under the circumstances of this case, primary jurisdiction to try appellant for receipt of the stolen money orders lies with the civilian community. Here, the victim of the theft (a commercial enterprise) was unrelated to the military, the unknown thief (ves) and seller(s) of the money orders have no established military connection, and the location of the sale was unquestionably outside military jurisdiction. On these facts we believe that the civilian courts have the paramount interest in deterring this type of criminal activity which, other than for appellant's involvement, had no connection with military authority or the

---

**1.** Footnotes omitted. Appellant's assignments   of error and brief at 3–4.

performance of military duty. *Schlesinger v. Councilman, supra.* Furthermore, the receipt of the stolen property, by itself, had no lingering or reflecting-back effect on the military community which impacted negatively on morale, or on the efficient and effective administration of the armed forces, or on mission performance. *Compare United States v. Shea, supra,* with *United States v. Howard,* 14 M.J. 988 (N.M. C.M.R.1982). No preconceived design to negotiate the stolen money orders at military facilities was established at trial.

It is evident from the record, however, that appellant did, in fact, make and utter (or caused to be made and uttered) the stolen money orders at military-base facilities using military personnel and identification. These offenses are clearly within the court-martial jurisdiction of the naval service. The military's interest in deterring such criminal activities was properly and effectively vindicated in the numerous specifications alleged under Charges V and VI. The finding of guilty of specification 5 of Charge VII, accordingly, is set aside and the specification is dismissed.

## II

Appellant contends that he was denied his right to a thorough and impartial Article 32, UCMJ, pre-trial investigation. This contention is based upon the failure of the pre-trial investigating officer to grant appellant's request to compel the presence of witnesses who would provide foundation testimony concerning certain statements affixed by stamp on checks and money orders introduced by the Government at the proceeding. The statements on the checks reflect that payment was refused because of insufficient funds and the statements on the money orders reflect that payment was refused because the money orders were stolen. Appellant argues that the statements were inadmissible as they constitute unsworn hearsay in the absence of the foundation testimony which potentially would have been provided by the requested witnesses. Without the admission of these statements, appellant further contends, the

evidence presented at the pre-trial investigation—which included appellant's confession and other testimony—failed to establish probable cause that appellant committed the offenses to which the checks and money orders pertain.

At trial, detailed defense counsel moved to reopen the pre-trial investigation in order to examine these witnesses. The motion was denied by the military judge who instead offered counsel the opportunity to depose the requested witnesses. Counsel, however, declined to obtain the witnesses' testimonies in the form of depositions.

An Article 32, UCMJ, pre-trial investigation serves a twofold purpose as a discovery proceeding on behalf of the accused and as a means of establishing probable cause as a guard against the referral to trial of baseless charges. *E.g., United States v. Ledbetter,* 2 M.J. 37, 43 (C.M.A. 1976); *United States v. Martinez,* 12 M.J. 801, 805 (N.M.C.M.R.1981). Thus, the rules of evidence do not apply at such proceedings and hearsay is generally admissible. Mil.R.Evid. 1101(d). This was also the rule prior to 1 September 1980, the effective date of the enactment of the Military Rules of Evidence.

> As [sic] an investigation, the strict rules of evidence applicable at trial are not followed. Rather testimony and other evidence of all descriptions normally will come to the attention of the investigating officer, some germane to the charges before him, and others of no material significance whatever; some will implicate the accused, and some will fail to do so, while tending to implicate others not then under charges.

*MacDonald v. Hodson,* 19 U.S.C.M.A. 582, 583, 42 C.M.R. 184, 185 (1970).

Furthermore, this assignment of error must be rejected in light of detailed defense counsel's failure to depose the absent witnesses. As stated by the Court of Military Appeals:

> [W]here a defense counsel fails to timely urge appellant's substantial pretrial right—in this instance, the opportunity to depose in lieu of sworn personal cross-ex-

amination—with no adverse effect at trial, then, "... there is no good reason in law or logic to set aside his conviction." *Mickel, supra* at 327, 26 C.M.R. at 107.[2] *United States v. Chuculate*, 5 M.J. 143, 146 (C.M.A.1978) (footnotes omitted).

### III

In his third assignment of error, appellant contends that he was denied his right to individual military counsel. We disagree.

Pursuant to Article 38(b), UCMJ, 10 U.S.C. § 838(b), appellant requested that First Lieutenant Heier be made available as individual military counsel. This request was forwarded by the convening authority to Commanding General, First Marine Division, for an administrative determination as to First Lieutenant Heier's availability. Commanding General, First Marine Division, determined that First Lieutenant Heier was not reasonably available because of his heavy caseload, the inability of other counsel to assimilate his defense duties in his absence, and because no attorney-client relationship existed between appellant and First Lieutenant Heier. Detailed defense counsel requested a redetermination of this denial because, after personally contacting First Lieutenant Heier, he found an inconsistency between the number of cases First Lieutenant Heier said he was assigned and the number reported by the Commanding General. Again, the request for individual military counsel was denied, and detailed defense counsel subsequently appealed the adverse determination, *see* paragraph 48*b*, Manual for Courts-Martial, 1969 (Rev.), to Commanding General, Fleet Marine Force (Pacific), who likewise denied the request based upon First Lieutenant Heier's caseload and the inability of the command to fulfill his duties during his expected absence.

■ The record further reflects that First Lieutenant Heier may have been ordered not to discuss his caseload with detailed defense counsel. This purported restraint upon counsel was in no way prejudicial to appellant in that detailed defense counsel was subsequently permitted to contact First Lieutenant Heier and discuss his current caseload. The military judge, in response to a motion by detailed defense counsel, ruled that the above circumstances involving First Lieutenant Heier's command did not involve any misconduct or fraud and that there was no abuse of discretion as to the determination of First Lieutenant Heier's unavailability. We agree.

■ The military judge also denied a motion to have First Lieutenant Heier appear as a witness on the individual military counsel issue. Appellate defense counsel summarily asserts that it was error for the military judge to deny this witness request. It is clear from the record, however, that the request was properly denied in that First Lieutenant Heier's personal testimony would have been merely cumulative to the information already before the court. Furthermore, the testimony could have been adequately presented in the form of a deposition or interrogatories had detailed defense counsel so desired. *See United States v. Tangpuz*, 5 M.J. 426, 429 (C.M.A.1978). The ruling is subject to reversal only if there has been an abuse of discretion by the military judge. *Id.* Under the circumstances of the instant case, we find that the military judge did not abuse his discretion in denying the witness request.

The only question of substance in this assignment of error is whether the military judge erred in ruling that First Lieutenant Heier was not reasonably available to serve as individual military counsel. We find that the ruling was correct.

■ As stated *supra,* the Commanding Generals reached their decisions as to First Lieutenant Heier's unavailability based upon factors including the size of counsel's caseload, the inability of the other attorneys at First Lieutenant Heier's command to assimilate his defense duties, and the fact that no attorney-client relationship existed. The proper test to employ in evalu-

**2.** *United States v. Mickel,* 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958).

ating such determinations and the military judge's ruling thereon is stated by this Court in *United States v. Harcrow,* 9 M.J. 669 (N.C.M.R.1980):

> While caseload standing alone is not sufficient to deny assignment as an individual military counsel, consideration of an attorney's caseload plus the impact that counsel's absence would have on his clients and the ability of other counsel to absorb his responsibilities could provide a reasonable basis for denial. *United States v. Kelker,* 4 M.J. 323 (C.M.A.1978). In short, if it is demonstrated on the record that there is a reasonable basis in fact for the deciding officer's determination of unavailability that determination should not be disturbed.

*Id.* at 673. *See also United States v. Ettelson,* 13 M.J. 348 (C.M.A.1982); *United States v. Quinones,* 1 M.J. 64 (C.M.A.1975); *United States v. Gatewood,* 15 U.S.C.M.A. 433, 35 C.M.R. 405 (1965); *United States v. Cutting,* 14 U.S.C.M.A. 347, 34 C.M.R. 127 (1964); *United States v. Vanderpool,* 4 U.S.C.M.A. 561, 16 C.M.R. 135 (1954).

■ It is evident, therefore, that the proper factors were considered and that there was no abuse of discretion in the determination that First Lieutenant Heier was not reasonably available. Furthermore, even if it were found that improper considerations had prompted the denial of appellant's request for individual military counsel, appellant has not alleged that he was prejudiced by the adverse determination nor does our examination of the record demonstrate that appellant suffered any prejudice. "As the right [to individual military counsel] is not absolute and an improper denial of it can be disregarded because of absence of prejudice to the accused, dismissal of the charges is an ill-suited remedy for the injury." *United States v. Redding,* 11 M.J. 100, 112 (C.M.A.1981).

### V

Appellant argues that the Government failed to prove his guilt of specifications 2, 9, 10, 11, 12, and 16 of Charge VI beyond a reasonable doubt. The contested specifications allege that appellant unlawfully made and uttered money orders on six separate occasions in violation of Article 123a, UCMJ. In order to prove that the money orders were indeed unlawfully made and uttered, the Government introduced appellant's confession corroborated by statements stamped on the money orders to the effect that payment was refused because they were stolen. Appellant objected to the introduction of the statements in that they constituted inadmissible hearsay evidence in the absence of a proper foundation. The Government argued that no foundation was necessary because of Mil.R.Evid. 902(9) which provides for the self-authentication of commercial paper and related documents. The military judge agreed with the Government and permitted the introduction of the statements into evidence.

■ Mil.R.Evid. 902(9) presumes the genuineness of commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law and does away with the requirement of extrinsic evidence of authenticity as a condition precedent to admissibility. The provision, of course, does not conclusively establish the genuineness of such evidence and the party objecting to its admission may offer evidence contesting its authenticity. *See United States v. Carriger,* 592 F.2d 312 (6th Cir.1979).

■ As previously stated, the applicability of Mil.R.Evid. 902(9) is limited to the provisions of commercial law. Uniform Commercial Code (UCC) § 3–510 provides that evidence of dishonor,[3] such as the drawee's statement that payment is refused because of insufficient funds, is admissible and creates a presumption of dishonor. The commentary following the section, however, explains that UCC § 3–510 is inapplicable to justifiable refusals to pay or accept which are not consistent with dishonor. Thus, a statement to the effect that payment was refused because the instrument

---

**3.** The term "dishonor" is defined at UCC § 3–507.

was stolen does not fall within the scope of Mil.R.Evid. 902(9). The contested stamped statements on the money orders were therefore inadmissible hearsay in the absence of a proper foundation.

 The inadmissibility of these statements, however, does not preclude our finding that appellant's guilt of specifications 2, 10, 11, 12, and 16 of Charge VI was proved beyond a reasonable doubt. We are convinced by appellant's confession, corroborated by stipulations of testimony to the effect that the money orders were uncollectible, (see Appellate Exhibits XXX, XXXI, and XXXII),[4] that appellant possessed the requisite fraudulent intent and knowledge when he made and uttered the money orders, that he did not or would not have sufficient funds in or credit with the depository to pay the money orders upon presentment. Contrary to the implication in appellant's brief before us, the contested specifications did not allege that the money orders were stolen, nor is the stolen nature of the money orders an element of the offenses charged. Specification 9 of Charge VI, however, was not proved beyond a reasonable doubt for, while the fact that appellant did not receive actual payment on the instrument is not relevant to conviction of the offense of wrongfully and unlawfully making and uttering a fraudulent instrument,[5] we find that no evidence of the requisite intent and knowledge was offered to corroborate appellant's confession to the underlying offense. See Mil.R.Evid. 304(g). Accordingly, the finding of guilty to specification 9 of Charge VI is set aside and the specification dismissed. We note that this action will have no practical effect on our reassessment of the sentence because the offense alleged in specification 9 of Charge VI pertains to the same transaction as that alleged in specification 4 of Charge V to which appellant pled and was found guilty, thus rendering the two specifications multiplicious for sentencing purposes.

Upon reassessment of the sentence, we find it to be appropriate, specifically finding a dishonorable discharge to be an appropriate punishment for this appellant and the offenses of which he was convicted. *United States v. Usry,* 9 M.J. 701 (N.C.M.R. 1980).

Accordingly, the findings, subject to the modification above, and the sentence as approved on review below are affirmed.

Senior Judge SANDERS and Judge BOHLEN concur.

---

4. The exhibits were admitted at trial at R. 263, 265, and 266, respectively.

5. Appellant did not receive payment on the money order since he was apprehended by criminal investigation personnel while in the process of uttering the instrument. The depository thus did not refuse payment because the instrument was not presented.