UNITED STATES

v.

George E. BRANDELL, 535 92 5581,
Private First Class (E–2), U.S.
Marine Corps.

NMCM 89 2045.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 16 Sept. 1988.

Decided 14 Aug. 1991.

LT Jeffrey S. Horwitz, JAGC, USNR, Appellate Defense Counsel.

LT Peter J. Wiernicki, JAGC, USNR, Appellate Defense Counsel.

CDR T.W. Osborne, JAGC, USN, Appellate Government Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Before STRICKLAND, FREYER and ORR, JJ.

FREYER, Judge:

Notwithstanding his pleas, this appellant was convicted, in a trial held on Okinawa, of numerous worthless check and associated offenses and was sentenced by the military judge to reduction to pay grade E–1, forfeiture of all pay and allowances, confinement for 24 months, and a bad-conduct discharge. The evidence against him giving rise to our specified issues[1] consisted of rather poor, but not completely illegible, photocopies of the checks in question and what purport to be photocopies of a set of Bank of Hawaii statements pertaining to the appellant's checking account, to which is attached what purports to be a signed but unsworn memorandum of the manager of the Marine Corps Air Station (presumably Kaneohe Bay) branch of the Bank of Hawaii certifying that the attached copies of the statements are true copies of the originals. The defense at trial made various best evidence, legibility, "foundation," authenticity, and hearsay objections to the checks, and authenticity and "foundation" objections to the bank statements, but all the objections were overruled. Since the

military judge declined to state a basis for his rulings, as it was certainly his prerogative to do, we must consider the matter without benefit of any announced findings or explanation by the trial court.

■ For reasons unknown to us, the prosecution elected to offer, not the originals of the checks in question, but photocopies, and those were of rather poor quality. (At page 16 of the record, the defense counsel claims to have been informed that the original checks were at Camp Zama, which we know to be a post located in the Tokyo metropolitan area, at which the Army operates a criminal investigation laboratory serving Department of Defense activities in the Far East. If that is so, then, in view of the regular airline service, both military and civilian, between mainland Japan and Okinawa, any excuse for failing to obtain and offer the originals is not readily apparent.) Although we, ourselves, might have exercised our discretion in favor of not admitting such copies, at least in the absence of an explanation by the trial counsel of why better evidence was not available, the admitted documents are sufficiently legible that the pertinent contents can be descried with effort, and the defense has presented nothing factual on which to base a conclusion that the documents are inaccurate or that the defense has been prejudiced by the poor-quality photocopying; consequently, we agree with the Government that it was not reversible error for the military judge to have overruled the best evidence and legibility objections. *See United States v. Feldhacker*, 849 F.2d 293 (8th Cir.1988).

The issue of greatest concern to us is whether or not an adequate hearsay excep-

1.  I. DID ADMISSION OF PROSECUTION EXHIBITS 26 THROUGH 50 COMPLY WITH MILITARY RULES OF EVIDENCE 1103 AND 1104?
    II. WERE STAMPS REFLECTING DISHONOR ON PROSECUTION EXHIBITS 26 THROUGH 50 ADMISSIBLE INTO EVIDENCE AS EXCEPTIONS TO THE HEARSAY RULE WITHOUT EVIDENCE SHOWING THEY WERE MADE IN THE REGULAR COURSE OF BUSINESS? *SEE* MILITARY RULE OF EVIDENCE 803(6): *UNITED*

*STATES V. WILSON,* 1 M.J. 325 (C.M.A.1976); AND *UNITED STATES V. DABABNEH,* 28 M.J. 929 (N.M.C.M.R.1989).
    III. IS PROSECUTION EXHIBIT 53 ADMISSIBLE AS AN EXCEPTION TO THE HEARSAY RULE? *SEE* MILITARY RULE OF EVIDENCE 803(6). IF INADMISSIBLE, IS THERE SUFFICIENT EVIDENCE REMAINING IN THE RECORD OF TRIAL TO PROVE THE APPELLANT GUILTY OF THE 26 SPECIFICATIONS ALLEGING A DISHONORABLE FAILURE TO MAINTAIN FUNDS?

tion foundation was laid for admission of the non-sufficient funds ("NSF") stamped notations on the checks to show not only the *fact* that the checks were dishonored but also the *reason* for the dishonor; and for admission of the bank statements pertaining to the appellant's account.[2] Objections on grounds of authenticity were also made, but we deem those objections less controversial, at least as to the checks and notations thereon.

The leading case in this area is *United States v. Dababneh*, 28 M.J. 929 (N.M.C.M.R.1989), which, unfortunately, was decided shortly after the trial of the instant case and, therefore, was not available to provide a comprehensive intellectual framework for the objections and rulings that needed to be made. What is most significant about *Dababneh* is the sharp theoretical and practical distinction which that case draws between authentication and laying a foundation for a hearsay exception. We found it necessary to reemphasize that distinction in *United States v. Duncan*, 30 M.J. 1284 (N.M.C.M.R.1990), and we do so again here.

■ With respect to authentication of the checks and the stamps thereon, the cause of admissibility is aided not only by the distinctive appearance of the checks and stamps—*see* Military Rule of Evidence (Mil.R.Evid.) 901(b)(4)—but also by the general commercial law, as represented by provisions of the Hawaii Uniform Commercial Code corresponding to those quoted in *Dababneh*. Of course, as Article 36 of the Uniform Code of Military Justice (10 U.S.C. § 836) makes clear, the rules of evidence applicable in trials by court-martial are not those enacted by the state legislature of Hawaii, but those prescribed by the President of the United States. Mil.R.Evid. 902(9), however, imports the "general com-

mercial law," of which the Hawaii Uniform Commercial Code is representative, *into* our law of evidence; thus, the requirement for authentication may be satisfied if the checks, including the stamps thereon, meet the criteria for "commercial paper," which they obviously do.[3] Moreover, as explained in *Dababneh*, the stamps are non-hearsay evidence of the fact of dishonor, because the stamps, themselves, effect and, therefore, *are* the dishonor. We are, therefore, satisfied that, in the absence of any meaningful factual challenge, the defense *authenticity* objection to admission of the checks, including the stamps thereon, was properly overruled.

■ The bank statements are not commercial paper, but, in our view, they qualify for authentication by distinctive characteristics. The printed letterhead, the account holder's name and address, and the account number all match the corresponding data printed on the checks. In addition, none of the checks shown to have been dishonored appears by number on any of the statements as paid, and the numbers and dates of the paid checks are entirely consistent with the sequential numbering and dates of the dishonored checks. Finally, there is attached to the bank statements the certifying memorandum described in the first paragraph of this opinion. That memorandum, of course, does not qualify the statements for self-authentication, nor does it, itself, satisfy the rules of evidence, but it may, nevertheless, be considered, pursuant to Mil.R.Evid. 104(a), in assessing the admissibility of the attached bank statements. As a result, we are satisfied, again in the absence of any meaningful factual challenge, that the defense authenticity objection to admission of the statements was properly overruled.

2. In fact, the trial counsel never clearly articulated, nor was he called upon to do so, for what purpose[s] the checks were being offered. In the absence of a limiting statement by the trial counsel in offering them, or by the judge in admitting them, especially over objection, we presume that they were admitted generally for whatever they tended to prove, which, in this case, included the reason for, as well as the fact of, dishonor.

3. We understand the defense argument that the copies are not, themselves, commercial paper, but we think that the policy underlying Mil.R.Evid. 1003 allows for the application of Mil.R.Evid. 902(9) to authenticate duplicates of commercial paper, in the sound discretion of the court.

■ The situation as regards hearsay is quite another matter. Mil.R.Evid. 902(9) is a rule of authentication, not a rule of hearsay exceptions; consequently, its incorporation of general commercial law is limited to, and can be used solely in connection with, the requirement of authentication. *See Dababneh*, 28 M.J. at 935 (footnote 5). Even though state law may provide that certain commercial paper and entries thereon "are admissible," we find nothing in the Military Rules of Evidence which permits state general commercial law, or any other state law, to satisfy the "record of regularly conducted activity," or any other, hearsay exception foundation; and, even under state law, the question must still be asked: admissible to prove what?—the fact of dishonor, as shown by the mere presence of an authentic stamp, or the reason for dishonor, depending, as it would, on the truth of the matter asserted in the stamp? In any event, in this case resort must be had to the foundational requirements of Mil. R.Evid. 803(6).

No Mil.R.Evid. 803(6) foundation or any other hearsay exception foundation was laid by the prosecution, either for admitting the stamped notations on the checks to prove the *reason* for dishonor, or for admitting the bank statements for the truth of the many damaging (to the appellant) financial data shown therein.

■ In the absence of any basis for doing otherwise, we must conclude that the stamped check notations were improperly admitted to show the reason for dishonor as being non-sufficient funds, because the hearsay objection to them was incorrectly overruled. *See Dababneh; see also Unit-*ed *States v. Matthews,* 15 M.J. 622 (N.M.C.M.R.1982). *Per contra,* a careful reading of the defense counsel's battery of objections reveals that a hearsay objection to the bank statements [4] was not among them.[5] Whether this omission was due to inadvertence or intention is unclear, but it does appear to us that the available hearsay objection was thereby waived. In this regard, Mil.R.Evid. 103(a)(1) offers us no unprincipled discretion to disregard a waiver or to relieve a party of the consequences thereof. Before we may do that, we must find plain error. Mil.R.Evid. 103(d). If there were, even now, a challenge to the accuracy of the bank statements such as to induce a lack of confidence in the findings, we might apply the label of plain error to avert a miscarriage of justice. *See United States v. Ruiz,* 30 M.J. 867 (N.M.C.M.R.1990), citing *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). In the absence of any such challenge, we must apply waiver and so consider the case as if the bank statements had been properly admitted.

■ Among the financial data contained in the statements is the account balance during the period of time that the dishonored checks were being presented for payment. This evidence leaves no room for doubt that the reason for the dishonor of each check concerning which a finding of guilty was reached was non-sufficient funds. Thus, we conclude that there is no reasonable likelihood that the error in admitting the stamped notations on the checks to show the reason for dishonor contributed to the verdict in any way and that it was, therefore, harmless.

---

**4.** We presume that the bank statements reflect "computer-stored," vice "computer-generated," data and, thus, required a hearsay exception foundation to be laid or waived as a condition of admissibility. Even if the contrary were true, the burden would have been upon the Government to prove it as part of the process of laying a foundation for the admissibility of the documents. *See generally Duncan.*

**5.** The objections to the bank statements were "[a]uthenticity and foundation," but the defense counsel never explained to what the "foundation" objection referred. In what he described as a "three-prong objection" to the checks, the defense counsel enumerated foundation, hearsay, and authenticity, so presumably, in his mind, foundation referred to something other than hearsay. In any event, this case illustrates the problem with what the *Dababneh* footnote 5 declaimed against as the loose use of the term "foundation" in objecting to evidence. While the military judge has no obligation to assist either party in formulating objections, we do not mean to exclude a role for the judge in clarifying the record in the interest of promoting a fair trial and averting claims of ineffective assistance of counsel.

This conclusion renders it unnecessary to reexamine so much of *Dababneh* as limits the method of laying a Mil.R.Evid. 803(6) foundation to "the testimony of the custodian or other qualified witness," the sole method provided in the text of the rule, *cf.*, *In re Japanese Electronics Products*, 723 F.2d 238, 288 (3d Cir.1983); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 505 F.Supp. 1190, 1233–36 (E.D.Pa. 1980).

We have no idea what possessed those charged with presenting this case for the Government to so do in such a precarious fashion that, except for a probable defense counsel oversight, the case would surely have been lost. In reaching the result we do, we wish to make it perfectly clear that this case must not be seen as an example of how to try similar cases in the future.

The findings of guilty and the sentence, as approved on review below, are affirmed.

Senior Judge STRICKLAND and Judge ORR concur.